Filed May 10, 1892.

---

15,692.

## THE FORT WAYNE ELECTRIC LIGHT COMPANY *v.* MILLER ET AL.

CONTRACT.—*Subscription to Secure Removal of Manufactory.*—*Conditions Precedent.*—*Recovery of Money Paid.*—*Performance of Agreement.*—Citizens of Plymouth were negotiating with an electric light company to move its business of manufacturing incandescent lights to such city, and the company wrote that it was "not expedient to" do so, but added: "We, however, feel that we are under obligations to recognize your efforts, and we will, however, move all the manufactory of the Jenney Arc Lamps and Dynamos from Fort Wayne to Plymouth on condition of you giving our company ten acres of ground suitably located for our works, and $15,000 in cash, to be invested in buildings and machinery on said grounds, and will take $115,000 of the capital stock of our company," paying therefor in the following manner: 25 per cent. cash on a date given, and the remainder in three equal installments on dates named. Three days after, the agents of such citizens called on the company and asked for an invoice of its property, and to investigate its financial condition, but the officers thereof said it was impracticable to do so then, owing to the state of their business, and in lieu thereof the company executed the following writing: "We will guarantee that our invoice will show a surplus of $300,000 of good assets over and above our liabilities, counting patents and good will at $100,000 on April 1, 1888. This guarantee is made because the company has not invoiced this year, and to satisfy you that we will not declare any dividend that will impair the assets below the sum as shown in the invoice, of which

we give you a copy, dated January, 1887, and that we will in addition change our letter of March 24 [quoted above] to conform to your subscription to stock, $115,000 and bonus of $15,000, which is that the $15,000 is to be paid within ten days, and 25 per cent. of stock so soon as we commence moving machinery to Plymouth, and 25 per cent. every three mōnths thereafter until paid." The propositions in these two letters were accepted by the citizens, and the company was informed that they had "raised the proper amounts," and that they would fully comply with the terms of the propositions. Subsequently the plaintiffs, who were citizens of Plymouth, subscribed, for the purpose of inducing the company to bring its "factory" to the city, fifteen thousand dollars; they and others also subscribed for stock of the company amounting to $115,000, the money to be paid in installments of 25 per cent. every three months, "the first installment to be paid when said company shall commence removing the machinery of their arc light manufacturing plant to the city of Plymouth." Both of these subscriptions were turned over and accepted by the company. A tract of ten acres was also conveyed to it, upon which it erected a shop at a cost of $11,000, and placed a boiler, or engine, and some other machinery, therein, and then called upon the stockholders for the payment of 25 per cent. of their subscriptions. Payment was refused, and suit brought to recover back the $15,000, on the ground that the company had not complied with its contract.

*Held,* that the persons who subscribed the $15,000, the persons who subscribed for the stock, and the donators of the land were all acting together in a common enterprise, and their promise and acts together constituted the consideration for the promise to remove the manufacture to Plymouth.

*Held,* that the failure of the company to make the invoice was a breach of contract.

*Held,* that the averment that the company had never "moved all or any part of the manufacture of Jenney Arc Lamps and Dynamos from Fort Wayne to said city of Plymouth, nor did said company even begin the removal thereof," was sufficient to show a non-compliance with the contract on the part of the company, and to excuse the payment of the subscriptions or the tender of the amount thereof.

*Held,* that, construing all the writings together, the machinery referred to was the machinery of the manufactory at Fort Wayne.

*Held,* that the condition on the part of the company could only be complied with by a *bona fide* commencement of the removal of the machinery actually belonging to and used in its business at Fort Wayne; and until a commencement, or a beginning, of this character was made, there was nothing due on the stock subscriptions.

*Held,* that the erection of the building was not in any sense or degree the rendition by the company of any part of the consideration.

*Held*, further, that the invoice was to be furnished within a reasonable time; and to show what was such a reasonable time it was competent to show what the directors of the company said, when they gave the guaranty, about the time when it would be practicable and convenient for them to make the invoice.

From the Adams Circuit Court.

*R. S. Taylor, J. Morris* and *J. M. Barrett,* for appellant.

*J. E. McDonald, J. M. Butler, A. H. Snow, J. M. Butler, Jr.,* and *C. Kellison,* for appellees.

McBRIDE, J.—The appellant is a corporation, engaged in the manufacture of electric lighting apparatus at Fort Wayne. In the spring of 1888 negotiations were entered into looking to the removal of all or a part of its business to Plymouth, Marshall county. The negotiations were conducted on the part of the appellant by its directors, and on the other part by a committee, representing certain of the citizens of Plymouth.

As the result of an interview between the citizens' committee and the directors, the following was delivered to the committee:

"FORT WAYNE, IND., 3–24, 1888.

"*Mr. E. R. Wheeler, H. G. Thayer, J. W. Parks, Ira D. Buck and C. T. Mattingly, Committee, Plymouth, Ind.:*

"GENTLEMEN—On consideration of your proposition we have. decided that it will not be expedient to move from Fort Wayne any part of our busines of manufacturing incandescent lights. We, however, feel that we are under obligations to recognize your efforts, and we will, however, move all the manufacture of the Jenney Arc Lamps and Dynamos from Fort Wayne to Plymouth on consideration of you giving our company ten acres of ground suitably located for our works, and $15,000 in cash, to be invested in

buildings and machinery on said grounds, and will take $115,-
000 of the capital stock of our company, paying therefor in
the following manner : 25 per cent. cash on April 15, 1888 ;
25 per cent. July 15, 1888 ; 25 per cent. October 15, 1888,
and 25 per cent. January 15, 1888.

" Very truly yours,

" H. G. OLDS,

" J. H. BASS,

" P. A. RANDALL,

" R. T. McDONALD,

" M. W. SIMONS,

*"Directors of the Fort Wayne Jenney Electric Light Co."*

Three days later the committee, having conferred with
their constituents, returned to Fort Wayne for the purpose
of investigating the financial condition and standing of the
company, preliminary to closing a contract with it.    After
another conference with three of the directors of the com-
pany, a paper was executed and delivered to them in the fol-
lowing terms :

" FORT WAYNE, IND., March 27, 1888.

*"Mr. E. R. Wheeler and others, members of Plymouth Com-*
*mittee :*

" GENTLEMEN—We will guarantee that our invoice will
show a surplus of $300,000 of good assets over and above
our liabilities, counting patents and good will at $100,000, on
April 1st, 1888.

" This guarantee is made because the company has not in-
voiced this year, and to satisfy you that we will not declare
any dividend that will impair the assets below the sum as
shown on the invoice, of which we give you a copy, dated
January, 1887, and that we will in addition change our letter
of March 24th to conform to your subscription to stock
$115,000 and bonus of $15,000, which is that the $15,000 is
to be paid within ten days, and 25 per cent. of stock so soon

as we shall commence moving machinery to Plymouth, and 25 per cent. every three months thereafter until paid.

· " Respectfully,

" FORT WAYNE JENNEY ELECTRIC LIGHT CO.

" By R. T. McDONALD, *Treas.*

" R. T. McDONALD.

" P. A. RANDALL.

" M. W. SIMONS."

April 7th the following was sent by the committee to the company.

" PLYMOUTH, IND., April 7th, 1888.

"*To the Fort Wayne Jenney Electric Light Co., Fort Wayne, Indiana:*

" GENTLEMEN—You are hereby notified that at a regular called meeting of the executive committee of the citizens of Plymouth, the undersigned chairman was delegated to inform you that we, the citizens of Plymouth, do hereby accept your written offer of date March 24th, 1888, and your letter of March 27th, 1888, making certain changes in your original proposition. The said citizens of Plymouth having raised the proper amounts accept your said offer, and will fully comply with the terms of said proposition.

" JOSEPH SWINDELL, *Pres't of Com.*

"Attest:

" IRA D. BUCK, *Sec'y.*"

Later, a subscription paper was circulated and executed, in the following words:

" We, the undersigned, do hereby agree to pay to the Fort Wayne Jenney Electric Light Company, of Fort Wayne, Indiana, the sums we have heretofore subscribed for the purpose of inducing them to bring their factory to Plymouth, Indiana. This subscription is to be paid for the purpose of inducing said factory to remove the arc light department of its factory to Plymouth, and it is to be paid by the 10th of April, 1888, and shall not be binding upon any sub-

scriber hereto unless the entire bonus required shall be subscribed."

On this, fifteen thousand dollars was subscribed and paid in cash, which was turned over to and accepted by the company."

A stock subsription to the capital stock of the company, amounting in the aggregate to $115,000, was made, the subscription paper being in the following words:

"We, the undersigned, do hereby agree to pay to the Fort Wayne Jenney Electric Light Company, of Fort Wayne, Indiana, the several sums set opposite our respective names for the number of shares by us subscribed and set opposite our respective names. Said sums to be paid in instalments of 25 per cent. every three months, the first instalment to be paid when said company shall commence removing the machinery of their arc light manufacturing plant to the city of Plymouth, Indiana."

This was also turned over to and accepted by the company. . In addition to this a tract containing ten acres of land was conveyed to it by an unconditional warranty deed, and accepted by it. It erected a building, or shop, on the land at a cost of about $11,000, placed a boiler, an engine and some other machinery in the building, and then called upon the stock subscribers for the payment of 25 per cent. of their subscriptions, but payment was refused; the subscribers claiming that the company had not complied with the terms of the contract.

This suit was commenced September, 1889, by certain of the cash subscribers who aided in raising the $15,000, which was paid to the company, for themselves and such others of the subscribers to that fund as might elect to join with them to recover back the money thus paid.

The complaint recites the making of the contract, and avers of the writing executed March 27, that when the committee called to investigate the financial condition and standing of the company, they were informed by Simons, who was a di-

rector in the company, and McDonald and Randall, who were respectively its treasurer and secretary, that it would be impracticable, because of a rush of business in the manufacturing department, to shut down the factory at that time for the purpose of taking an invoice, and to allow the committee to examine into the condition of its assets, but that they would make such invoice, and allow such examination as soon as practicable, and that to satisfy the committee for the time being they executed that writing. It is averred that the promise and guaranty contained in said writing was one of the principal inducements causing them to take the course they did thereafter, without making a thorough examination as to the appellant's financial standing. The complaint avers full performance of the contract on the part of the appellees and those associated with them, alleges the delivery to the appellant of stock subscriptions for $115,000, which were retained and are still retained by the appellant, the payment to it of the $15,000 in cash and conveyance to it of the ten acres of land, and that both money and land were received by the company and appropriated to its own use, and also alleges entire failure to perform on the part of the appellants.

It is particularly averred that the appellants had failed and refused to make or furnish to appellees, or to the stock subscribers, the invoice mentioned in the writing of March 27. The complaint also avers that said company has "never used or occupied said grounds and buildings for manufacturing Jenney arc lamps, lights or dynamos, nor has said company ever moved all or any part of the manufacture of Jenney Arc Lamps and Dynamos from Fort Wayne to said city of Plymouth, nor did said company ever begin the removal thereof, etc."

While there are several assignments of error, only three propositions are properly before us for decision.

1st. The sufficiency of the complaint.

2d. The measure of damages, and

3d. The admissibility of certain testimony.

It is conceded that the facts averred show the execution of a valid contract. Counsel, however, do not agree in the construction of the contract. Counsel for the appellant construe it as one entire and single contract between the electric light company on the one hand and the citizens of Plymouth on the other, upon an entire consideration, but insist that the complaint avers a contract differing in some respects from that made by the papers. Counsel for the appellees style it " an entire quadripartite contract." We do not regard the discussion of this question as calculated to throw any light on the real controversy.

While it is true that the undertaking of the subscribers to the cash fund was in one sense distinct from that of the parties to the stock subscription, or the donors of the land, and while their undertakings were not only collectively different, but that of each individual subscriber was several, and his own several personal obligation, yet all were acting together in a common enterprise for the accomplishment of a common purpose. The cash subscriptions, stock subscriptions and land donations together constituted the consideration for the promise of the appellant to remove its manufacture from Fort Wayne to Plymouth. On the other hand the sole and only consideration moving from the appellant to the other party, as expressed in the contract, was its promise in its proposition of March 24th, that it would "move all the manufacture of the Jenney arc lamps and dynamos from Fort Wayne to Plymouth."

The particular in which the appellant insists that the complaint avers a contract differing from that made by the papers, is in relation to the invoice. Appellant treats this as an attempt to inject a parol modification into the written contract. We do not view it in that light. We think the guarantee of March 27th, fairly construed, imposes upon the appellant the duty of making an invoice that would show the condition of the company on the first day of April, 1888, and while no time is fixed within which it is to be made, the

law would imply a promise to make it within a reasonable time. The averments in the complaint relating to the invoice are, therefore, in our opinion, fairly within the terms of the contract, and the allegation of failure to make it is an allegation of a breach of one of the company's material undertakings.

It is also argued by the appellant that the averments of the complaint, taken together, do not show performance by the appellees, or non-performance by the appellant, but, on the contrary, show only partial performance by both. It is said that there is no showing of the payment or tender of 25 per cent., or any part of the stock subscription, and that there is no averment that the company never commenced moving machinery to Plymouth. It is true that there are no averments of the payment or tender of any portion of the stock subscriptions. We think, however, that sufficient excuse is shown for not making such payment or tender. Counsel argue that the obligation of the stock subscribers to pay 25 per cent of their subscriptions became absolute when the company commenced to move machinery from Fort Wayne to Plymouth, and that there is no averment that they had not thus commenced to move machinery; that the averment that they had never " moved all or any part of the manufacture of Jenney Arc Lamps and Dynamos from Fort Wayne to said city of Plymouth, nor did said company ever begin the removal thereof," is not sufficient. They say the " removal of the *manufacture*, and the removal of *machinery to manufacture with*, are two different things." In this we agree with them.

They are, however, measuring their obligation entirely by the language of the guaranty of March 27. The terms of the contract and the full measure of the obligations assumed by the parties can only be determined by construing all of the writings together. The paper of March 27, aside from the guaranty and agreement to make an invoice, was a mere modification of the proposition of March 24. As will be

seen by reference to it, that proposition was that they would, upon certain terms "*move all the manufacture* of the Jenney Arc Lamps," etc., and definite dates were fixed for the payment of the stock subscription. No definite time was fixed for the payment of the $15,000. The modification made the $15,000 due and payable within ten days, and the first installment of stock subscription, instead of being payable April 15, was to be paid as soon as the company should commence moving machinery to Plymouth. What machinery? Would the moving of any machinery meet the condition? It is evident that the machinery intended by the parties was that referred to in the original proposition—the machinery of the manufactory at Fort Wayne. The citizens of Plymouth were endeavoring to secure the transfer to their city of a manufacturing concern which they were assured had assets exceeding its liabilities in the sum of $300,000. The proposition made to and accepted by them was, that this established and productive industry in its entirety should be moved from Fort Wayne to Plymouth. The condition could only be complied with by a *bona fide* commencement of the removal of the machinery actually belonging to and used in said business at Fort Wayne. Until a commencement, or a beginning, of this character was made there was nothing due on the stock subscriptions.

We think the complaint states a good cause of action.

The question as to the measure of damages is sought to be presented in several different ways, and is, we think, properly and fairly in the record by the ruling of the court on instructions asked by the appellant and refused, and on an instruction given by the court.

The instructions asked were long, and we will not copy them.

In substance the court was asked to instruct the jury as follows:

That the burden was on the plaintiff to show all the facts necessary to fix the damages, which the jury were required

The Fort Wayne Electric Light Company v. Miller et al.

to ascertain and fix separately as to each plaintiff; that while their verdict should be for a gross sum, it should be a sum made up of the separate damages suffered by each plaintiff; that if the contract was broken the plaintiffs had the option of demanding a rescission, or of affirming the contract and suing for the breach; that if the plaintiffs had elected to rescind they would have been entitled to a return of their money upon placing the other party *in statu quo,* but that by bringing this suit they had elected to affirm the contract and claim damages for its breach; that the damages they were entitled to recover were compensatory, and might be much more or much less than the amount paid; that from the averments of the complaint it must be taken that the benefits which the plaintiffs expected to gain by the performance of the contract consisted in the growth and prosperity of the city of Plymouth, the increase of its population, the enhancement of the value of property in said city, and the various advantages which would accrue to them from the location and maintenance of an electric light manufacturing industry in their city; that if the company had broken the contract the measure of damages would be the loss which they suffered of gains, profits or advantages which would have accrued to them if the contract had been kept; that unless the plaintiffs had proven that they had suffered loss or damage by reason of the breach of the contract, other than the subscription of the $15,000 they could recover no more than nominal damages; that unless there was evidence of loss suffered the verdict for damages should be limited to nominal damages; that while it is the law that one who has paid his money upon a consideration which has wholly failed may recover back the money paid, the rule does not apply when any part of the consideration has been received by him, or parted with by the other party; that the building of the shop on the donated land, with part of the donated money, was to the extent of the money invested part performance by the appellant of the contract, and that the appellees had

thereby received a part of the consideration on which they had parted with their money, and were not entitled in this suit to recover back their money.

The court refused all of the instructions asked, and, over appellant's objection, gave the following:

6. It is well settled law that a party who agrees to perform an act and fails to keep his agreement, must pay compensation for all injuries that naturally and proximately result from the breach. So far as the plaintiffs in this suit, and those they represent, are concerned, it does not appear, and is not claimed by the defendant company, that there is any other consideration for the payment of the money subscribed by them to the donation fund than the agreement for the removal of that part of the manufactory of the defendant company for the manufacture of the Jenney Arc Lamp and Dynamo from Fort Wayne to Plymouth, and a failure to perform that stipulation operates as a failure of consideration for the money so paid. In cases of that kind, where the defendant has received money of the plaintiff upon a consideration which has failed, or where the defendant has money of the plaintiff which, in equity and good conscience, he ought to refund, in the absence of any allegation of special damages and proof thereof, the plaintiff in general is entitled to receive the money back and lawful interest thereon from the time of payment up to the time of recovery. Therefore, in this case, if the jury believe from the evidence that the consideration upon which the plaintiffs and those they represent in this suit paid their money and upon which the defendant company received it has failed, there being no allegation of special damages, the measure of damages would be the several amounts paid, with interest thereon from the time of payment up to this date at the rate of 6 per cent. per annum.

In our opinion the instruction given is a correct statement of the law, and is clearly applicable to the case made

The Fort Wayne Electric Light Company *v.* Miller *et al.*

by the pleadings and by the evidence. We also think the court did not err in refusing the instructions asked.

As we have already said, as we construe the contract, the sole and only consideration for the payment of the money was the promise to remove the manufacture—the particular manufacturing enterprise named—to Plymouth. It is not only averred, but is found as a fact by the jury, this was never done or commenced. It can not be said that the erection of the buildings was in any sense, or in any degree, the rendition of any part of the consideration. Both land and the money which paid for buildings and machinery were given to the appellant as part of the consideration for what it promised to do. Counsel say that to allow the appellant to invest the money in the buildings, and then compel it to refund it, is to make it an involuntary purchaser of the property. The money was paid to it to be used in that specific way, it is true, but only upon conditions. Without compliance with the conditions it had no right to either retain or invest it. The investment in buildings was, under the circumstances, wholly unauthorized, and it can not complain because it is required to refund it. In our opinion, upon the facts as they are found by the jury, there was an entire failure of consideration, and in such case, as the appellant concedes, the measure of recovery is the money paid, with interest.

The only remaining question is on the admissibility of certain testimony.

The court, over the objection of the appellant, allowed the appellees to prove by certain witnesses what was said by the directors of the appellant at the time of making the written guaranty of March 27th, as to when it would be practicable and convenient for them to make the invoice mentioned in that writing.

It was objected that this was an attempt to " contradict, vary or explain a written contract by evidence of preceding and contemporaneous conversations and verbal statements,

and evidence of intentions and understandings, all of which were merged in the written contract finally executed."

We have already construed the contract as imposing upon the appellant the duty of making and furnishing an invoice within a reasonable time. What would be a reasonable time must be determined from the evidence. We think it was competent and proper to show in that connection, as bearing upon that question what the directors said when they gave the guaranty, about the time when it would be practicable and convenient for them to make the invoice.

Judgment affirmed, with costs.

Filed Feb. 4, 1892; petition for a rehearing overruled April 30, 1892.