## HUDSON *et al.* v. ARCHER *et al.*

1. A written contract provided that defendants would erect a mill and operate it for five years, except at such times as, for causes beyond their control, it could not be operated without loss by the use of economy and skill; that they would not during said period sell the mill unless the vendee would bind himself to fulfill the conditions of the contract; and that plaintiffs would pay defendants a specified sum—a part on the arrival of the machinery, the balance on completion of the mill. After the mill was set up defendants received the designated sum, and, before the expiration of five years sold the mill without the consent of plaintiffs, and without requiring the vendee to observe said contract. Subsequently, within the five years, the mill was destroyed by fire and ceased to be operated. *Held,* that as all the conditions on which the money was to be paid were performed, plaintiffs could not recover back said sum, but were only entitled to damages resulting from defendants' breach in transferring the property without the required guaranty on the part of the vendee.

2. The damages resulting from defendants' transfer of the mill without requiring a guaranty on the vendee's part in behalf of plaintiffs, and from the vendee's failure to rebuild and operate the mill for the specific period, were not "clearly ascertainable in both their nature and origin," within Comp. Laws, Sec. 4581, but were merely speculative, and hence plaintiffs were entitled to nominal damages only.

3. Error in the admission of evidence will not be considered on appeal when the judgment is clearly right, and could not be changed by a new trial.

(Opinion filed Oct. 10, 1896.)

Appeal from circuit court, Yankton county. Hon. D. HANEY, Judge.

Action to recover damages for breach of contract. From a judgment for plaintiffs for nominal damages only, they appeal. Affirmed.

The facts are stated in the opinion.

*C. H. Dillon* and *R. B. Tripp,* for appellants.

The contract is entire, and plaintiffs are entitled to the return of the consideration. Partial performance is immaterial in principle as well as law. Griggs v. Austin, 3 Pick. 22; Brown v. Harris, 2 Gray 360; Archer v. McDonald, 36 Hun. 194; Churchill v. Stone, 58 Barb. 233; Williamson v. Johnson, 20 Atl. 279.

*French & Orvis,* for respondents.

Plaintiffs can only recover nominal damages. § 4581, Comp. Laws; Railroad v. City of Fort Scott, 15 Kan. 435; Fitzimmons v. Colver, 16 N. Y. 489; Allison v. Graham, 11 Mich. 552; Griffin v. Colver, 16 N. Y. 189.

CORSON, P. J. This was an action to recover damages for breach of contract. Judgment was rendered for the plaintiffs for nominal damages only, and they appeal. The action is based upon the following contract: "This memorandum of agreement, made at Yankton, Dakota, this 18th day of June, A. D. 1887, by and between W. S. Archer of Dayton, Ohio, and G. A. Archer, of Yankton, Dakota, parties of the first part, and G. R. Scougal, Newton Edmunds and E. E. Hudson, of said Yankton, as agents and trustees of the persons whose names are subscribed to a subscription to a fund to secure the erection of an oil mill, a copy of which is hereto attached, parties of the second part witnesseth: That the said parties of the first part hereby agree and promise to erect in said Yankton an oil mill

of dimensions not less than the following:   *   *   *   That they will operate said mill, and maintain therein at least the amount of machinery herein mentioned, for a period of five years from this date, provided that the said parties shall not be held to operate said mill during any time when, for causes not under their control, said mill cannot be operated without loss to them, they using at the time due economy and all proper skill.   The said parties of the first part further agree that they will not, during the period above named, sell or transfer the said mill or the machinery therein unless the parties receiving such transfer or couveyance shall bind themselves, to the satisfaction of the said parties of the second part, to observe and fulfill the terms of this agreement.   The said parties of the second part hereby promise and agree that they will pay, or cause to be paid, to the said parties of the first part, the sum of fifteeen hundred dollars, as follows:   $500 on the arrival at said Yankton of the machinery above named, and $1,000 when the said mill has been completed according to the terms of this agreement, and the machinery has been set up therein, and the mill made fully ready to be put in operation for the manufacture of linseed oil.   In witness whereof the said parties have hereunto set their hands, on the day and year first above written."   The plaintiffs in their complaint, allege breaches of the contract as follows:   "That the said defendants, on or about the 7th day of June, 1889, sold and transferred said mill, machinery, and business to the Yankton Linseed Oil Company, without the consent or satisfaction of said plaintiffs, and without any agreement on the part of said company to observe or fulfill the terms of said contract between the plaintiffs and the defendants, and that thereafter, on the 1st day of October, 1889, in violation of the terms of said contract, the oil mill and machinery ceased to be operated or maintained, and the said business has not been conducted by said defendants, or otherwise, since that date;   *   *   *   that, by reason of the premises, the consideration for the payment of said sum of $1,500 has failed,

and the plaintiffs are entitled to recover the same of the defendants, with interest from the date last mentioned; that no part of said sum has been paid. Wherefore, the plaintiffs demand judgment against the defendants for the sum of $1,500, with interest thereon from the commencement of this action, and for such other and further relief as shall be just and proper and for costs snd disbursements herein." The case was tried to the court without a jury, and it found the facts substantially as alleged in the complaint. The court also found that on or about October 1, 1889, said mill and machinery, together with a large quantity of flax seed, linseed oil, and other products manufactured in said mill, were totally destroyed by fire, without fault or negligence on the part of the defendants or of the Yankton Linseed Oil Company. "(6) For causes not under their control, the defendants could not have operated said mill more than they did, from the time it was first put in operation until it was destroyed, as aforesaid, without loss to them— they using, during the time, due economy and all proper skill; and, for causes not under their control, there has never been a time since said mill was so destroyed when the same could have been rebuilt and operated without loss to the defendants and said Yankton Linseed Oil Company, they using due economy and all proper skill; nor for reasons not under their control, has there been any time since said mill was destroyed when the same could have been operated without loss to the said company, it using due economy and all proper skill." The court thereupon stated its conclusions of law as follows: '(1) There was a breach of the contract on the part of defendants, in that they transferred the mill and machinery to the Yankton Linseed Oil Company, without obtaining from said company a contract satisfactory to plaintiffs, and binding such company to observe and fulfill the terms of the contract with plaintiffs. For this breach the measure of damage is the amount which will compensate the parties for all the detriment approximately caused thereby, or which, in the ordinary course

of things, would be likely to result therefrom. Comp. Laws, §
4581. (2) It appears from the contract itself that the persons
who furnished the $1,500 did so with the expectation and for
the purpose of receiving such benefits as would result to them,
as citizens and property owners in Yankton, from the erection
and operation of an oil mill in that city. A mill as contem-
plated, was erected and operated for a portion of the time spec-
ified in the contract. Consequently the subscribers received a
portion of the expected benefits. Conceding that defendants,
by transferring the mill in violation of the contract placed it
beyond their power to further comply with the contract, or
conceding that the findings of the court are erroneous as to the
ability of the defendants or the Yankton Linseed Oil Company
to rebuild and operate the mill without loss, still the conclusion
must follow that there was a partial performance of the con-
tract, and that a portion of the benefits contemplated by the
contract was received by the subscribers. If this view be cor-
rect, the detriment caused by the breach, either in respect to
the transfer, or the failure to longer operate the mill, must be
the loss of benefits contemplated by the parties, and not re-
ceived. As these are not clearly ascertainable in their nature
and origin, and as no evidence was offered tending to prove any
facts by which the court might determine the amount of dam-
ages sustained by the subscribers, plaintiffs can only recover
nominal damages. Comp. Laws, § 4581.

  The appellants contend: First, That the contract was an
entire one, and as the court finds that the defendants violated
the same by transferring the property without the consent of
the plaintiffs, and without the guaranty binding the grantee, to
the satisfaction of the plaintiffs, to observe and fulfill the terms
of said contract and agreement, the plaintiffs are entitled to
recover back the entire consideration paid. Second, That the
defendants having transferred the property to a corporation
without complying with the terms of said agreement, before
the time for full performance had expired, and thereby put it

out of their power to fulfill the terms of the same, a right of action at once accrued to the plaintiffs. Third, That evidence tending to show that defendants could not have operated the mill for the balance of the time, after said transfer, except at a loss, was incompetent, irrelevant, and inadmissible; and that such evidence and the findings of the court based thereon cannot affect plaintiff's right to recover in this action the consideration paid. The contention of the respondents is fully stated in the court's conclusions of law.

There was no express stipulation in the contract that the defendants should have the right to transfer said property, but there is an implied agreement that they might do so upon the conditions therein specified, namely, that the grantee should give security to the satisfaction of the plaintiffs that he would fulfill the terms of the contract. Any transfer of the property, therefore, without a compliance with the conditions of the contract, was clearly a breach of the same, as the defendants, by such transfer, put it out of their power to comply with the terms of the agreement. The court therefore very properly found that there was a breach of the contract on the part of the defendants by a transfer of the property.

The contention of the appellants that the contract in controversy is an entire one, and that the failure to comply with its terms entitles them to recover back the whole consideration paid, is founded upon the doctrine laid down in Griggs v. Austin, 3 Pick. 20; Archer v. McDonald, 36 Hun. 194; Brown v. Harris, 2 Gray, 359; Railway Co. v. Fort Scott, 15 Kan. 435; Batsell v. Railway Co. (Tex. Civ. App.) 23 S. W. 552; Light Co. v. Miller (Ind. Sup.) 30 N. E. 23; Williamson v. Johnson (Vt) 20 Atl. 279; Churchill v. Stone, 58 Barb. 233; and cases of that class. But we do not think the case at bar comes within the principle of those cases. The principle established by the leading case of Griggs v. Austin, *supra*, is "that when money is paid or a promise made by one party in contemplation of some act to be done by the other, which is the sole considera-

tion of the payment or promise, and the thing stipulated to be done is not performed, the money may be recovered back, or the promise founded on such consideration may be avoided between the parties to the contract." In that case the defendant had contracted to transport a quantity of freight from Boston to Liverpool. The vessel was stranded and wrecked before it reached Liverpool, and the freight was never delivered. As the freight money had been paid in advance, the shipper was allowed to recover it back. The case of Brown v. Harris, *supra,* in which the same principle was applied, was quite similar. In that case the plaintiff had paid his passage from San Francisco to Panama by steamer. The steamer was wrecked off Mazatlan, at which point the plaintiff was landed and left, and never carried by defendant to Panama. The court held he was entitled to recover back the passage money paid. Archer v. McDonald was a case where the plaintiff, the owner of a warehouse, had agreed to store and deliver to the defendant, the following May, a large quantity of lime. The warehouse and lime were destroyed by fire. The warehouseman brought an action to recover for his storeage, but the court held that he could not recover and must refund to the defendant $1,000, paid by him for storage in advance. In Light Co. v. Miller, *supra,* the defendant had agreed, in consideration of the payment of $15,000 cash, the donation of land and a stock subscription, to remove its electric light plant from Ft. Wayne to Plymouth. The defendant failed to remove its plant, or any part of it, and the court held that the plaintiff, who had contributed to the $15,000 cash fund, could recover back the money paid by him, as damages. It will be noticed that in all these and similar cases the money was paid upon condition that a certain act should be performed, which was never performed. Railway Co. v. Fort Scott and Batsell v. Railway Co., *supra,* would seem upon a casual examination to sustain the contention of the appellants, but upon a careful consideration it will be found that they do not extend the doctrine announced in the cases re-

ferred to.   In the former case the city of Ft. Scott subscribed $75,000 to the capital stock of the railway company, upon conditions that the railway company should construct its road through the city of Ft. Scott, make the city the end of a division, and establish engine and machine shops at that point. The city also donated $25,000 for the erection of such engine and machine shops.   The railway company failed to establish its engine and machine shops at that point, or make it the end of a division, and the city brought suit to recover $100,000 damages for a breach of the agreement by the railway company. The court, in reversing the judgment of the court below, on the ground that incompetent evidence had been admitted, uses the following language:   "Wherever, therefore, in case of a subscription upon conditions by a city to the capital stock of a railroad company, there has been a failure on the part of the company to comply with one or more of the conditions, and it can be shown by the contract, or *aliunde,* what amount was paid as a consideration for the condition or conditions broken, such amount and interest is the proper measure of damages. Cases may arise (perhaps the case at bar, when all the facts are presented, may be found to be such a one) in which the contract is an entirety, and there is in it no means of apportionment, and nothing can be shown *aliunde* to establish an apportionment, nor to show the relative or absolute values of the conditions performed and those broken.   In such a case the rule of law, we take it to be, is that no action can be maintained to recover the consideration, nor upon a *quantum meruit,* until all the conditions are performed; and that in case the consideration be paid in advance, and only part of the conditions are performed, the entire consideration can be recovered."   But in that case and in the following one cited from Texas the subscriptions were made upon express conditions, which were not complied with, and much stress is laid upon this fact by Judge BREWER in his opinion in the Kansas case.

An examination of the contract in the case at bar discloses the fact that the money paid was not upon any condition

other than that an oil mill should be completed and placed in running order. In the first part of the contract, the plaintiffs are described as trustees or agents of persons whose names are subscribed to a fund "to secure the erection of an oil mill"; and by the last stipulation in the contract, the $1,500 was to be paid upon the arrival at Yankton of the machinery and the completion of the mill according to the terms of the contract. The machinery arrived at Yankton, and the mill was completed according to the terms of the contract, and the money was thereupon paid over to the defendants. Suppose the plaintiffs, on the completion of the mill according to the contract, had refused to pay over the money; could not the defendants have recovered it in an action brought immediately after the mill was completed and in running order? We can discover no legal reason why they could not. The conditions upon which they were to be paid the $1,500 were fully performed. There was no other condition that the defendants were required to perform to entitle them to their money. It is true they had agreed to do certain things, but not as conditions upon which they were to be paid the $1,500. If we are right in our construction of the contract, then the money was properly paid to the defendants, and the plaintiffs cannot recover it back. We may conjecture that the intention of the plaintiffs was to make not only the completion of the mill, but the running of it for five years, conditions upon which the defendants were to be entitled to the $1,500; but they have failed to express that intention in their agreement, and the courts cannot make a new agreement for them. It will be observed that the agreement on the part of the defendants to run the mill for five years is entirely distinct and independent from the agreement on the part of the plaintiffs to pay the money. The contract is not, therefore, an entire one, within the meaning of that term as used in the decided cases, except as to the erection and completion of the mill. As the mill was completed as stipulated, and the money paid as stipulated, that transaction was closed. What damages, then,

have the plaintiffs sustained by the transfer of the property to the corporation without the consent of the plaintiffs? The damages for the breaches of the contract complained of would be only the detriment caused by such breaches. Comp. Laws, § 4581. As no damages can be recovered for the breach of a contract "which are not clearly ascertainable in both their nature and origin" (Sec. 4581), we think the learned circuit court properly held that no damages, other than nominal damages, could be recovered in this action. As stated by the circuit judge, the evident object of the plaintiffs in making the contract was to advance the interest of property owners in Yankton by an increase of population and a rise in property values. But to what extent the failure in transferring the property to a corporation without the consent of the plaintiffs, or the failure of the corporation to rebuild and run the mill for the specified period of five years, damaged the plaintiffs, was purely speculative and uncertain. The difficulty in fixing a measure of damages in contracts of the nature of the one we are now considering is not the fault of the law, but of the parties in not making proper provisions in the contract itself for the measure of damages. This subject was fully discussed by the supreme court of Michigan in Allison v. Chandler, 11 Mich. 542. In that case, Mr. Justice Christiancy, speaking for the court, says: "There are some important considerations which tend to limit damages in an action upon contract, which have no application to those purely of tort. Contracts are made only by the mutual consent of the respective parties; and each party, for a consideration, thereby consents that the other shall have certain rights as against him, which he would not otherwise possess. In entering into the contract, the parties are supposed to understand its legal effect, and, consequently, the limitations which the law, for the sake of certainty, has fixed for the recovery of damages for its breach. If not satisfied with the risk which these rules impose, the parties may decline to enter into the contract, or may fix their own rule of damages when, in

their nature, the amount must be uncertain.   Hence, when suit is brought upon such contract, and it is found that the entire damages actually sustained cannot be recovered without a violation of such rules, the deficiency is a loss, the risk of which the party voluntarily assumed on entering into the contract, for the chance of benefit or advantage which the contract would have given him in case of performance.   His position is one in which he has voluntarily contributed to place himself, and in which, but for his own consent, he could not have been placed by the wrongful act of the opposite party alone.

Again in the majority of cases upon contract, there is little difficulty, from the nature of the subject, in finding a rule by which substantial compensation may be readily estimated; and it is only in those cases where this cannot be done, and where, from the nature of the stipulation or the subject matter, the actual damages resulting from a breach are more or less uncertain in their nature, or difficult to be shown with accuracy by the evidence, under any definite rule, that there can be any great failure of justice by adhering to such rule as will most nearly approximate the desired result.   And it is precisely in these classes of cases that the parties have it in their power to protect themselves against any loss to arise from such uncertainty, by estimating their own damages in the contract itself, and providing for themselves the rules by which the amount shall be measured in case of a breach; and, if they neglect this, they may be presumed to have assented to such damages as may be measured by the rules which the law, for the sake of certainty, has adopted."   The case of Fitzsimmons v. Chapman. 37 Mich. 139, is quite analogous to the case at bar.   The court in that case held that as the parties had removed their plant, as provided for, to Reading, and commenced business there, the damages resulting from a failure to provide the capital specified were too remote and speculative to be recovered by the plaintiff, a subscriber to the fund raised to induce the owners of the plant to remove it from Vermont to Michigan.

We do not deem it necessary to consider the errors assigned as to the admission of evidence, as the decision of the court was clearly right, and could not be changed by a new trial. The judgment of the circuit court is affirmed.

HANEY, J., took no part in this decision.