## COOS BAY R. R. CO. v. NOSLER.
(48 Pac. 361.)

</div>

RAILROAD SUBSIDY—DEPENDENT AND INDEPENDENT COVENANTS IN
CONTRACTS.—A railroad subsidy agreement provided that the sub-
scriber would pay certain proportions of his subsidy as certain
parts of the work should be completed, and the balance when the
road should be built to the terminal point; the railroad company
agreeing to finish the road by a certain date, and to maintain a
depot at an intermediate town, with a certain switch. *Held,* that
the part payments were earned absolutely by the completion of the
respective parts of the road, without regard to the time of the
final completion, or of the construction of the depot or switch;
and the completion at the specified time is a condition precedent
to the payment of only the balance.

REMOTE AND SPECULATIVE DAMAGES—CONTRACTS.—The loss of antic-
ipated profits from the additional value which would have been
conferred upon town lots by the construction of a railroad to
the town in accordance with a subsidy contract is too remote and
speculative to be available as a recoupment or set-off in an action
by the company upon the contract: *Blagen* v. *Thompson,* 23 Or.
239, distinguished.

RECOVERY OF PART OF SUBSIDY—FAILURE OF CONSIDERATION.—The
mere failure to complete a railroad within the time specified by a
subsidy contract is not such a total failure of consideration as will
entitle a subscriber thereto to recover an installment paid in

accordance with the contract upon the prosecution of the work to an intermediate point, in the absence of any evidence as to the actual damages sustained.

From Coos:  J. C. FULLERTON, Judge.

This is an action to recover upon a subsidy agreement signed by the defendant with others and delivered to plaintiff. The agreement is as follows: "We, the undersigned, agree to pay to the Coos Bay, Roseburg & Eastern Railroad & Navigation Company the sums set opposite our names, respectively, in the manner following, to wit: Twenty-five per cent. when the first ten miles of said road are graded, commencing at or near Marshfield, Coos County, Oregon, and running eastward toward Roseburg, and via Coquille City and Myrtle Point; twenty per cent. when the rails are laid on the first ten miles; twenty-five per cent. when the second ten miles are graded; twenty per cent. when the rails are laid on the second ten miles; and the balance when the road is completed to Myrtle Point, Oregon. As a consideration for the following subscriptions, the said railroad company will maintain a depot within the corporate limits of Coquille City, Oregon, and a switch to tide water in the Coquille River at Coquille City, provided right of way and ground for wharfage are furnished. Road to be finished to Myrtle Point before January 1, 1891, and to Roseburg by December 31, 1891.
  (Signed)            J. H. NOSLER.   $1,000.00."

Subsequently, the following notification thereof was executed by defendant, and delivered to and accepted by plaintiff, viz.: "Whereas, on or about the —— day of June, A. D. 1890, the undersigned did enter into a certain contract with the Coos Bay, Roseburg & Eastern Railroad Company in relation to the payment of certain sums set after our names, in the event of a railroad being con-

structed as therein set forth, now therefore, for the consideration therein expressed, we, each for himself, agree to and with said company that said contract shall be and the same is hereby changed so that the following clause, to wit: 'Road to be completed to Myrtle Point by January 1, 1891, and to Roseburg by December 31, 1891,' shall read as follows, to wit: 'Road to be finished to Myrtle Point from Marshfield before May 1, 1891, and to Roseburg within a year from the time it reaches Myrtle Point.' We also agree that in case any delay is caused by reason of the procuring of the rights of way, collection of Coos County or Roseburg subsidy, or other just cause, that the aforesaid times shall be extended a reasonable time further to cover such delays.   This is upon the understanding that the survey be commenced immediately, and work follow without delay.

(Signed)                         J. H. Nosler."

It is alleged in the complaint that there became due and payable to plaintiff under the agreement the following installments, to wit:   On February 5, 1891, $250; November 30, 1891, $200; July 12, 1893, $250; July 19, 1893, $200; and on August 25, 1893, $100.

The defendant interposed three several defenses by way of recoupment or set-off.   The first is based upon the condition that plaintiff was to maintain a switch to tide water at Coquille City, which it is alleged it has failed to observe, although the right of way and ground for wharfage have been furnished, for which defendant claims damages in the sum of $250.   The second is based upon anticipated profits, fixed at $5,000, which it is claimed defendant could have realized from his real property in and adjoining Coquille City if the road had been constructed according to the terms of the agreement.   And, third, upon the alleged payment of $250 towards his subscrip-

tion on February 5, 1891, the consideration for which it is claimed has wholly failed, by reason of the plaintiff's failure to complete the road to Myrtle Point, or to extend the same to Roseburg, within the times stipulated, for which amount, with interest from the date of payment, he prays judgment. Proof was offered by the defendant, and admitted over plaintiff's objection, tending to support the second defense, and the court's instructions were in support of the validity thereof, to which objection was also made, and error is assigned because such objections were not sustained. Another instruction excepted to by plaintiff is as follows: "It is admitted in the pleadings that defendant paid to plaintiff the sum of $250, the same being the amount due from defendant under said contract when the first ten miles of said railroad was graded. If you find from the evidence in this case that plaintiff has not constructed the said railroad to Myrtle Point within a reasonable time, as provided in said contract, under the instruction I have heretofore given you, then defendant is entitled to recover the same from plaintiff, and you should so find by your verdict." The verdict was for defendant for $250, with interest at eight per cent. per annum from February 5, 1891, and, judgment being given in accordance therewith, plaintiff appeals.

REVERSED.

For appellant there was a brief over the names of *J. W. Hamilton* and *John A. Gray,* with an oral argument by *Mr. Hamilton.*

For respondent there was a brief by *Mr. James F. Watson,* with an oral argument by *Messrs. A. J. Sherwood, Edward B. Watson, Andrew M. Crawford,* and *Wm. R. Willis.*

Mr. Justice Wolverton, after making the foregoing statement of the facts, delivered the opinion of the court.

A solution of the most important questions arising in this case depends upon the proper construction of the subsidy agreement as modified.  The purpose of the action is to recover under the agreement, so that, when we have determined its true meaning, the measure of plaintiff's remedy will become manifest; so will also the remedial rights of the defendant.  Whether performance is necessary to a recovery, and therefore constitutes a condition precedent, must be determined by the intention of the parties to the contract, and that intention must be ascertained from the terms of the agreement itself and the circumstances attending its execution.  "It cannot depend," says Lord Ellenborough, "on any formal arrangement of the words, but on the reason and sense of the thing as it is to be collected from the whole contract": 1 Addison on Contracts (Abbott & Woods' Ed.), *182; *Glaholm* v. *Hays*, 2 Mann. & Gran. 265; *McLure* v. *Rush*, 9 Dana, 65; *Larimore* v. *Tyler*, 88 Mo. 661.  Certain rules have been laid down by which to ascertain and discover such intention, but it is only necessary to refer now to such as are applicable to the case before us.  If, by the terms of a contract, money is to be paid by a day certain which is to or may happen before the performance of the service, or by a day certain and there is no day certain for the performance, the performance is not a condition precedent, and the party may sue for the money without averring or showing performance.  In such case the parties are left to the mutual remedies on which they obviously depended: *Cunningham* v. *Morrell*, 10 Johns. 202 (6 Am. Dec. 332).  But where a day is appointed for the payment of money, subsequent to the performance of that which is the consideration therefor, no action can be

maintained for the money before performance: *Middle-brook* v. *French*, 4 Conn. 1, 14; *Rider* v. *Pond*, 18 Barb. 179. And where the undertaking goes only to a part of the consideration on both sides, and the breach thereof may be compensated for in damages, it is then an independent undertaking; but if the undertakings are mutual, and go to the whole consideration, they are to be considered as conditions precedent, and there must be a performance or a tender before a recovery can be had. Mr. Parsons says of the latter rule, "that if the supposed condition covers the whole ground of the contract, and cannot be severed from it, or from any part of it, a breach of the condition is a breach of the whole contract, which gives to the other party the right of avoiding or rescinding it altogether. But where the supposed condition is distinctly separable, so that much of the contract may be performed on both sides, as though the condition were not there, it will be read as a stipulation, the breach of which only gives an action to the injured party: 2 Parsons on Contracts, *527; see also *Bean* v. *Atwater*, 10 Am. Dec. 91; *Dermott* v. *Jones*, 64 U. S. (23 How.), 220; Addison on Contracts (Abbott & Woods' Ed.), *190. For full discussions and illustrations of the rules here alluded to, see note by Mr. Sargeant Williams to *Pordage* v. *Cole*, 1 Wm. Saund. 319 i; 2 Parsons on Contracts, 521, note (r).

Guided by these rules, we find no difficulty in arriving at a satisfactory interpretation of the agreement in question. The defendant undertook to pay plaintiff twenty-five per cent. of his subscription when the first ten miles were graded, running eastward from Marshfield; twenty per cent. when the rails were laid, etc., and the balance, or ten per cent., when the road was completed to Myrtle Point. The payment of the last installment and the completion of the road to Myrtle Point were to be concurrent events, and are therefore mutual and dependent; but, as

touching all other payments, it was contemplated, and so considered by the parties, that they should be made prior to the completion of the road to Myrtle Point, and dependent only upon the completion of the designated sections thereof. The plaintiff has its right of action for the apportioned consideration as soon as it has performed the designated work, because it has earned it, and is entitled to it under the agreement. The stipulation for completion of the modified agreement is as follows: "Road to be finished to Myrtle Point from Marshfield before May 1, 1891, and to Roseburg within a year from the time it reaches Myrtle Point." It was also agreed that in case delay was caused by reason of the procuring of the rights of way, collection of the Coos County or Roseburg subsidy, or other just cause, that the times named should be extended a reasonable time to cover such delays. The time designated for the completion of the road to Myrtle Point must be considered as material, because the parties evidently so intended it from the first, and so treated it in the execution and acceptance of the modified agreement. The plaintiff was required to complete the road so far within the time fixed, and if it failed, it was in default; but such default would not affect any right of action which might have accrued to it theretofore under the agreement for the completion of specified portions of the work. It could not, however, recover upon the dependent undertaking, unless the defendant waived the stipulation touching such time of completion, nor could it recover upon such of the independent covenants respecting which performance had been delayed beyond the time fixed for such completion to Myrtle Point. Whatever may be the rule in equity respecting the matter, at law time within which a contract is to be performed is generally regarded as material, and no action can be maintained for recovery where performance does not take

place within the time limited: Bishop on Contracts, § 1344; *Slater* v. *Emerson*, 60 U. S. (19 How.) 238; *Warren* v. *Bean*, 6 Wis. 120; *Morrison* v. *Wells*, 48 Kan. 494 (29 Pac. 601).

The defendant stipulated what should be considered cause for delay in completing the road as required, and by this stipulation he must be bound, and if any delay has been caused by reason of procuring the rights of way, collection of Coos County or Roseburg subsidy, or other just cause, plaintiff should have the benefit of such delay, and the time thereof added to the time fixed for completion to Myrtle Point, and the result would fix the stipulated time of completion. The jury is very properly the judge of whether any and what delay had been caused by such hindrances. So that, if plaintiff has earned either of or all the first four installments prior to the stipulated time of completion to Myrtle Point, it has its right of action accordingly, regardless of whether it has fully completed the road to that place or not, and for full compensation if it has fully performed in that particular, without reference to its agreement to continue it to Roseburg. The full consideration having been made payable prior to the time of the stipulated completion to Roseburg, such completion must be regarded as a condition subsequent, and so must the stipulations requiring the maintenance of a depot and switch to tide water at Coquille City. This latter contemplates a continued service, and from its very nature is a condition subsequent; but the condition is such as might be enforced, and perhaps a failure to comply with it would be visited with damages; *Paducah Railroad Co.* v. *Parks*, 86 Tenn. 554 (8 S. W. 842); *Chamberlain* v. *R. R. Co.*, 15 Ohio St. 225; *Swartwout* v. *Michigan Air Line R. R. Co.*, 24 Mich. 405.

Now, as to the defenses relied upon. The legal effect of the one touching the failure to build and maintain the

depot and switch at Coquille City has already been determined. As a basis of recoupment or set-off, the defendant contends that he has been damaged by reason of the fact that he owned and possessed considerable real property in and about Coquille City, which he alleges would have been very materially enhanced in value if the road had been fully constructed and equipped to Roseburg within the time fixed by the agreement of subscription, and that he would have been able to have sold and disposed of the same at a large profit. It is hardly possible to conceive of any principle or rule by which such damages could be correctly and definitely ascertained and determined. They rest upon a contingency which may never have happened had the road been completed as agreed upon. Would the property certainly have been disposed of by its owner? He may have retained it for higher prices, as many have done during boom times, and finally not have sold at all. Or we may assume that his wisdom would have prompted him to sell every foot of his holdings. By what standard could his supposed profits be measured? Would he have sold when values were at their highest, or would he have been satisfied with a reasonable profit? And then we come back to the first principle, Would the property have been enhanced at all, and, if so, what would have been the ratio? So it is that these alleged profits are purely speculative, and extremely problematical. They are too remote and uncertain to form the basis of damages. The advantages which would have accrued to the defendant by the completion and operation of the road would have been such as would have enured to every other individual similarly situated; such as would have been enjoyed in common with other individuals of the community. This doctrine is applied in offsetting benefits to be derived from the construction of highways or railroads against damages assessable for the

exercise of eminent domain. Whatever of peculiar or especial benefit might accrue or result to the lands of the party claiming damages may be offset, but remote or speculative benefits in anticipation of a rise in property for townsite purposes, or, generally, by reason of the proposed opening of a highway, construction of a railroad, or other improvements, cannot be considered. Such benefits are the common privilege of all the individuals of the community, and one cannot be permitted to profit by it more than another: *Beekman* v. *Jackson County*, 18 Or. 283 (22 Pac. 1074); Mills' Eminent Domain, §§ 152, 153; *Whitely* v. *Mississippi Boom Co.*, 38 Minn. 523 (38 N. W. 753); *Wyandotte Ry. Co.* v. *Waldo*, 70 Mo. 629. The same principle has been applied in cases where a city sought to recover damages from a railroad company for failure to comply with certain conditions of a subscription contract after the city had fully complied upon its part: *Missouri, etc., Ry. Co.* v. *City of Ft. Scott*, 15 Kan. 435; see also *Missouri, etc., Ry. Co.* v. *Thompson*, 24 Kan. 170. So has it to individuals: *Cincinnati Ry. Co.* v. *Bensley*, 51 Fed. 738 (2 C. C. A. 480). *Blagen* v. *Thompson*, 23 Or. 239 (31 Pac. 647, 18 L. R. A. 315), is not in point, nor can the doctrine therein enunciated be made available in support of defendant's position. It cannot reasonably be supposed that a railroad company, in accepting subscriptions of subsidies in aid of the construction of its road, should have had in contemplation damages of the nature discussed that might accrue to each individual subscriber should it fail in its enterprise. Such damages would not be the approximate and natural consequences of the breach.

Much of what has been said will apply to the attempt to recoup for the installment of $250 paid. If it is true that the plaintiff completed the grading of the first ten miles of the road eastward from Marshfield by February

5, 1891, then the plaintiff had earned this sum, and, being justly due, it has been paid.  Before the defendant can recoup he must show that he has been damaged.  There has not been a complete failure on the part of the company to build the road; indeed, it was later constructed to Myrtle Point, but not at the exact time in which the company was required to build it.  So it cannot be said that there has been a total failure of consideration for the subscription.  In the case of *Fort Wayne Electric Light Co.* v. *Miller*, 131 Ind. 499 (30 N. E. 23, 14 L. R. A. 804), the sole and only consideration for the subsidy had, in effect, entirely failed, and hence it was maintained that the amount paid was the measure of the recovery.  But the case here is different; there has been a substantial compliance with the conditions of the subscription, that is to say, a very substantial and material condition of the subsidy has been complied with, and hence there is not a total failure of consideration.  The defendant can show and recoup such special and approximate damages as he has sustained by reason of the breach by plaintiff in not completing the road to Myrtle Point at the time fixed, if such is the case, and by failure to construct to Roseburg, but for such damages as have been shared by the community in general, and himself among the rest, he can have no claim.  For these considerations the judgment of the court below is reversed, and a new trial ordered.

REVERSED.