MABEL ESPE, Appellee, v. G. MCCLELLAND & SON et al., Appellants.

No. 39359.

JUNE 24, 1929.

*Aymer D. Davis* and *W. W. White,* for appellants.

*Peisen & Soper,* for appellee.

GRIMM, J.—About the 4th day of September, 1925, G. Mc-Clelland, a member of the firm of G. McClelland & Son, garage men, engaged in running a garage at Iowa Falls, Iowa, and in the business of selling and exchanging automobiles, sold to the plaintiff through her brother, a second-hand Ford coupé, for the sum of $165. The plaintiff was engaged in teaching school. She lived with her folks, a few miles southeast of Garden City, Iowa, and was teaching a mile and a half north of Garden City. While the car was being used by the plaintiff, in connection with her work, the sheriff and a state agent came to the plaintiff, and told her, in substance, who they were, and that they came to examine the car, because they had an idea it was a stolen car. Upon the order of the sheriff and the state agent, the car was taken to Eldora and placed in a garage, where an acetylene torch was used on the engine, to determine whether the numbers on the engine had been changed. It does not clearly appear from the record who transported the car from the place where it was found in the plaintiff's possession, to the garage in Eldora; but, at all events, it clearly appears from the record that the car was sent to the garage at Eldora upon the order of the sheriff and the state agent. So far as the record shows, the automobile is still in the garage where it was taken for the purpose of inspection and examination. The plaintiff testified, on cross-examination:

"After the sheriff took it [the car], I let him have it, and I have never asked him for it since. I gave the car up to him December 3, 1925. I have known all this time where the car was. I knew it was in Lockwood's garage. I have never been to the Lockwood garage to see it since that time, and I have never made any effort to get the car back."

The transfer of the car from G. McClelland & Son, made August 31, 1925, shows the make of car to be Ford, style coupé, model T-1916, engine number 1269514. The previous transfer was on January 26, 1925, from Ben Mills to G. McClelland & Son, with the same engine number recorded. On January 26, 1925, Ben Mills made application for an automobile license in Hardin County, Iowa, for this Ford coupé, specifying the same engine number. On July 1, 1924, there was a transfer from Ira Ellis, of Indianola, Warren County, to Ben Mills, of Iowa Falls, Hardin County, which removal certificate contained the same

engine number, 1269514. This removal certificate showed that the car had previously been registered eight times. When the car was examined in the Lockwood garage, by the application of an acetylene torch to the engine block, it was discovered that there were two sets of numbers on the engine. The first set of numbers was approximately 4771859. There is some dispute as to just what the figures of the first stamping were, but there is no conflict in the evidence but that the number 1269514 constituted a second serial or engine number. There is no claim that any certificate was passed to the plaintiff, or held by the plaintiff, showing a sufficient reason why the numbers were defaced, changed, or tampered with, as provided in Section 5083 of the Code of 1927. No part of the purchase price of the car had been returned to the plaintiff by the defendants.

At the close of all of the evidence, each party moved the court for a directed verdict. The court sustained the motion of the plaintiff, and a verdict and judgment were rendered in her favor.

The appellants set up five propositions relied upon for reversal.

I. The appellants claim that, because there was no evidence showing a wrongful or illegal change of numbers upon the engine, therefore the replacement is not covered by Section 5080 of the 1927 Code. The material portions of this section are as follows:

"No person shall:

"1. Deface or alter any serial, engine, or assembling number of a motor vehicle. * * *

"7. Possess a motor vehicle, the serial or engine number of which is defaced, altered, or tampered with."

Section 5081 is as follows:

"Any person found guilty of violating any of the provisions of the last preceding section shall be imprisoned in the penitentiary not more than five years or be fined not more than one thousand dollars or be imprisoned in the county jail not more than one year."

In Section 5083 it is provided that, under a criminal charge of possession of a motor vehicle with a defaced, altered, or

changed serial or engine number, the possession of a certificate of registration or transfer showing good and sufficient reason why the numbers were defaced or changed, shall be a defense.

In *State v. Dunn*, 202 Iowa 1188, in which the defendant was charged by indictment with violating Subsection 7 of Section 5080 of the Code of 1927, by possessing a motor vehicle the serial or engine number of which had been defaced, altered, or tampered with, the defendant, by requested instructions, which were refused, and by exceptions to the instructions given to the jury, presented the question whether knowledge on the part of one in possession of a motor vehicle of the fact that the engine number thereof had been altered, defaced, or tampered with, was an essential element of the crime defined by the statute. This court said:

"It is quite universally recognized at this day that the legislature may forbid the doing of an act and make its commission a crime without regard to the intent or knowledge of the doer. Whether a criminal intent or guilty knowledge is an essential element of a statutory offense is to be determined as a matter of construction from the language of the act, in connection with its manifest purpose and design. [Citing *Shevlin-Carpenter Co. v. Minnesota*, 218 U. S. 57 (54 L. Ed. 930), and many other cases.] * * * We have repeatedly recognized and applied the primary doctrine. *Jamison v. Burton*, 43 Iowa 282 [and other cases]."

Further, the court says:

"The statute does not, by its terms, make knowledge on the part of the accused that the number on a car in his possession has been altered, defaced, or tampered with an essential element of the offense."

What is said in the *Dunn* case upon the question of knowledge has equal application to the claim of the appellant in this case, concerning wrongful or illegal change of numbers upon the engine.

II. The defendants claim that the defects in the car were latent; that there was no implied warranty covering latent defects; and that the purchaser, through her brother, had an equal

opportunity with the seller to detect any defects in the car.

As previously stated, this automobile was sold on the 4th day of September, 1925. Prior to that time, the legislature (thirty-eighth general assembly), by an act approved April 25, 1919 (Chapter 396, Laws of the Thirty-eighth General Assembly), passed what is known as the "Uniform Sales Act," now found as Chapter 435, Title XXIV, of the 1927 Code. A portion of Section 9942 of the Code of 1927 is as follows:

"In a contract to sell or a sale, unless contrary intention appears, there is:

"1. An implied warranty on the part of the seller that in case of a sale he has a right to sell the goods, and that in case of a contract to sell he will have a right to sell the goods at the time when the property is to pass.

"2. An implied warranty that the buyer shall have and enjoy quiet possession of the goods as against any lawful claims existing at the time of the sale.

"3. An implied warranty that the goods shall be free at the time of the sale from any charge or incumbrance in favor of any third person not declared or known to the buyer before or at the time when the contract or sale is made."

Moreover, prior to the passage of the Sales Act, there was, in the sales of chattels, where the seller was in possession, an implied warranty of title. This court, in *Barton v. Faherty*, 3 G. Greene 327, said, in a case where a stolen horse had been sold to another:

"In every sale of chattels, where the seller has possession of the articles, and he sells as his own, and not as agent for another, the law implies a warranty of title. [Citing cases.] * * * The law is equally well settled that the purchaser may have a satisfaction from the seller if the title proves deficient. In this case, when Barton [the seller] received the money, a promise was implied in law that, if he gave Faherty a horse to which he had no title, that he would refund the money."

In *Stein v. Scarpa*, 96 N. J. Law 86 (114 Atl. 245), in a case

involving the sale of an automobile, the court said, among other things:

"The sale of goods in possession implied a warranty of title both at common law and under the Sales Act; and when the title failed, the consideration failed with it, the bargain became *nudum pactum,* and rescission then became the legal right of the vendee."

The plaintiff in this case was not required to use the Ford coupé, and thereby subject herself to the danger of prosecution, the punishment for which might be incarceration in the penitentiary. The statute forbids the possession of the car under the circumstances shown in evidence. She could not safely assume any supervision of any kind over the car. It is shown by undisputed evidence that the defendants in this case knew of the defaced engine numbers on December 4, 1925, the day after the car came into the possession of the sheriff and state agent. They are charged with knowledge of the law pertaining to cars in which engine numbers had been defaced or altered. No further rescission on the part of the plaintiff was necessary.

"Failure of consideration is a ground for rescinding the contract and recovering back the money paid. But it does not follow that, because a technical rescission has not been made, and cannot be made, that a defendant cannot avail himself of the defense of failure or want of consideration. * * * Where the failure of consideration is total, as where nothing of value has been received by the defendant under it, and the plaintiff cannot perform it, no notice of rescission is required, but the defendant may plead want or failure of consideration." 6 Ruling Case Law 684.

See, also, *Fort Wayne Elec. L. Co. v. Miller,* 131 Ind. 499 (30 N. E. 23, 14 L. R. A. 804).

"In cases of that kind, where the defendant has received money of the plaintiff upon a consideration which has failed, or where the defendant has money of the plaintiff which, in equity and good conscience, he ought to refund, in the absence of any allegation of special damages and proof thereof, the plaintiff in general is entitled to receive the money back, and lawful interest

thereon from the time of payment up to the time of recovery.''
*Fort Wayne Elec. L. Co. v. Miller,* 131 Ind. 499 (30 N. E. 23, 14
L. R. A. 804).

The ordinary rules of law pertaining to latent defects and
equal opportunity of inspection, relied upon by the defendants,
do not apply in a case where, as in this one, a statute forbids the
 mere *possession* of an article in the condition in
which this one was found. Under the law in this
state, an automobile upon which the engine num-
bers have been changed, unless accompanied by a
proper certificate of explanation of the change of numbers, is in
the nature of ''contraband'' goods. Manifestly, no title to it
could be transferred.

It matters not whether we consider this case as one in which
there was a total failure of consideration, or a failure of title.
The result is the same. The car was utterly useless to the plain-
tiff. She could not safely exercise any right of title over it what-
ever.

III. It is claimed by the defendants that the plaintiff
should have applied to the officers in charge of the car for a re-
lease thereof, under the terms of Chapter 121 of the Acts of the
Forty-second General Assembly, being Section 5083-b3 of the
Code of 1927. It is sufficient answer to this claim to say that the
act referred to was not approved until April, 1927. The car was
taken from the plaintiff early in December, 1925.

We have carefully examined all other objections made by the
defendants, and find no error. The case must be, and is,—*Af-
firmed.*

ALBERT, C. J., and EVANS, MORLING, and KINDIG, JJ., con-
cur.