ANITA VALLEY, INC., Appellant,

v.

Park E. BINGLEY, d/b/a Bingley Auction Company, Appellee.

No. 62016.

Supreme Court of Iowa.

May 30, 1979.

Harry T. Watts and Ronald L. Anderson of Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for appellant.

James A. Giles and Robert M. Holliday of Wasker, Sullivan & Ward, Des Moines, for appellee.

Considered by REYNOLDSON, C. J., and UHLENHOPP, McCORMICK, ALLBEE, and McGIVERIN, JJ.

ALLBEE, Justice.

This is an appeal from the grant of a summary judgment in favor of defendant, Park E. Bingley, doing business as Bingley Auction Company. Plaintiff, Anita Valley, Inc., is attempting to recoup funds paid to Bingley for the purpose of purchasing cattle which were never delivered.

At the time of the transaction in question, Anita Valley was owned by four stockholders: Gene Bessire, a veterinarian who served as the corporation's president; Joyce Bessire; Jack Bertelson, who served as secretary-treasurer; and Eloise Bertelson. Bingley had done business with Doctor Bessire on previous occasions through a sale barn in which Bessire was involved. Bingley testified in his deposition, however, that he had not previously done business with Anita Valley and was not familiar with that corporation.

On April 10, 1975, Doctor Bessire told Jack Bertelson that Bingley had 322 head of cattle available for Anita Valley to purchase and that the corporation could make a significant profit on a quick resale. On the basis of that representation, Bessire obtained a check from Bertelson which was drawn on the corporation's account for $51,117.50. Bessire took the check to Bingley, who was the payee, and told Bingley that he, Bessire, had 322 head of cattle which he desired to sell to Anita Valley. Bessire also told Bingley that Anita Valley would not purchase the cattle from Bessire. He proposed that Bingley pay Bessire and that Bessire himself would deliver the cattle to Anita Valley. Bingley accepted the Anita Valley check and paid Bessire $50,916.25, a sum that was $201.25 less than Bingley received. Bingley heard nothing more about the transaction and assumed that Bessire had delivered the cattle.

In fact, however, Bessire never delivered any cattle to Anita Valley. He instead used the money received from Bingley to pay down notes from another of his business ventures, Anita Auction Company. This fact was concealed from Bertelson when Bessire told him that the cattle had contracted "red nose" and were quarantined for sixty days. Bertelson discovered the fate of the Anita Valley funds only after Bessire declared bankruptcy two months later, in June of 1975. Bingley was informed of what had transpired nearly two years later.

In the spring of 1977, Jack Bertelson, acting through his attorney and on behalf of Anita Valley, made demand upon Bingley for return of the funds. That demand

was rejected, and this action, which plaintiff characterizes as being for money had and received, ensued. After discovery had occurred, Anita Valley moved for summary judgment. Defendant also filed such a motion, contending that if the district court found the material facts to be uncontroverted, Bingley was entitled to judgment rather than Anita Valley. The court entered an order which stated simply that no material facts were in dispute and that the equities were with the defendant. Therefore, Anita Valley's motion was overruled and Bingley's was sustained. Anita Valley then brought this appeal.

I. In order to obtain a summary judgment, the moving party is required to show that there is no genuine issue of material fact involved in the case and that he is entitled to a judgment as a matter of law. *Iowa Department of Transportation v. Read*, 262 N.W.2d 533, 536 (Iowa 1978). In considering such a motion, a court is required to examine the record in the light most favorable to the party opposing the motion to determine whether the movant has met his burden. *Id.* Thus, if a genuine issue of material fact exists in this case, neither party can obtain a summary judgment.

II. To establish a claim for money had and received, it is necessary to prove that defendant has received money which in equity and good conscience belongs to plaintiff. Although it is ordinarily an action at law, money had and received is governed by equitable principles and is favored by the courts. *Key Pontiac, Inc. v. Blue Grass Savings Bank*, 265 N.W.2d 906, 908 (Iowa 1978). While a motion to transfer this case from equity to law was denied by another district judge, nothing appears to except this case from the usual rule. Because an action for money had and received is favored, the tendency is to expand, rather than restrict, its application. *See generally* 58 *C.J.S. Money Received* § 1, at 911 (1948).

Such an action is appropriate where money is given for a special purpose which is not carried out. *Key Pontiac, Inc.*, 265

N.W.2d at 908. But it generally will not lie against one who has not been personally enriched by the transaction. *Trevor v. Fuhrmann*, 338 Mich. 219, 224, 61 N.W.2d 49, 51 (1953); *Restatement of Restitution* § 142 (1937); *see Hulme v. Stumma*, 204 N.W.2d 632, 633 (Iowa 1973) (circumstances must make it inequitable for defendant to *retain* money). *See generally* D. Dobbs, *Handbook on the Law of Remedies* § 11.9, at 767–71 (1973) (restitution may be denied where benefits have been passed on); 58 *C.J.S. Money Received* § 23 & n.82 (1948). *But see Federal Employees Credit Union v. Capital Automobile Co.*, 124 Ga.App. 144, 145, 183 S.E.2d 39, 41 (1971). This general requirement of personal enrichment means that this case presents two different situations raising two different substantive issues. The first is, What must plaintiff show in order to recover the funds which Bingley has retained? The second is, What is required for plaintiff to recoup the funds which Bingley passed on?

Recovery of the $201.25 which Bingley retained would be possible merely on a showing that the purpose for which the funds were delivered was not fulfilled. *Key Pontiac, Inc.*, 265 N.W.2d at 908; *Restatement of Restitution* § 142, Comment f (1937) (partial restitution; "change of circumstances is a bar to restitution only to the extent that such restitution would cause loss to an innocent and nontortious recipient."). Because there is no dispute that Bingley retained these funds, and that Anita Valley did not receive the cattle for which its money was given, summary judgment for plaintiff would have been proper on this issue. Iowa R.Civ.P. 237(d).

But, as noted above, Bingley paid the great bulk of Anita Valley's funds to Bessire for the stated purpose of permitting Bessire to deliver the cattle. In order for Anita Valley to recover those passed-on funds from Bingley, it must show that Bingley's payment to Bessire was unreasonable. That is, there is a question of whether Bingley could reasonably expect that Bessire would actually deliver the cattle to Anita Valley. *Restatement of Restitution*

§ 142(3) (1937) (change of circumstances is not defense if the recipient's conduct was tortious); *cf. Hiskey v. Williams*, 40 Iowa 499 (1875) (one who deals with an agent as though he is the principal, when the agency is known, is responsible for any losses, as having created the situation).

■ In his deposition, Bingley indicated that he had done business with Bessire on previous occasions and that he expected Bessire to be "plumb honest." But he also admitted that Bessire had told him that Anita Valley would not buy the cattle from Bessire. Further, Bingley acknowledged having had no prior dealings with, or knowledge of, Anita Valley. These facts could permit reasonable minds to draw different inferences and reach different conclusions regarding the reasonableness of Bingley's actions. For that reason, neither party was entitled to summary judgment. *Daboll v. Hoden*, 222 N.W.2d 727, 733 (Iowa 1974) (summary judgment is rarely appropriate in negligence actions, even on undisputed facts, because determination of existence of negligence requires a judgment as to the reasonableness of conduct under the circumstances). When the record is viewed in a light most favorable to plaintiff, that record would support an inference that defendant's actions were unreasonable. Conversely, when considered in a light most favorable to defendant, the record would support an inference that his actions were reasonable. Trial court erred in granting defendant's motion, but was correct in denying plaintiff's.

While this holding disposes of the case on appeal, comments upon several of the defenses which Bingley raises may be of assistance to trial court in the disposition of this case.

III. Insofar as Bingley debates the application of a money had and received theory to this case, his contentions have already been answered. He has, however, raised several other defenses, including unclean hands, equitable estoppel and laches, and ratification. He also claims to be protected by section 554.3405(1)(c), The Code.

A. Bingley contends that Anita Valley is guilty of unclean hands because Bessire's knowledge of his self-dealing is imputable to the corporation since he was its president and because it delayed nearly two years after discovering Bessire's scheme before communicating with Bingley.

■ The first claim is untenable. When an agent acts for his own benefit and contrary to the interests of his principal, that agent's knowledge is not imputable to the corporation. *Charles v. Epperson & Co.*, 258 Iowa 409, 426, 137 N.W.2d 605, 615 (1966).

■ And delay in asserting one's rights is not the sort of conduct which gives rise to unclean hands. Generally, the clean hands doctrine applies to actions by which a party acquires the claim which it presses. *Republic Molding Corp. v. B. W. Photo Utilities*, 319 F.2d 347, 349 (9th Cir. 1963) ("What is material is not that the plaintiff's hands are dirty, but that he dirtied them in acquiring the rights he now asserts . . . ."); *see, e. g., Shaw v. Addison*, 239 Iowa 377, 28 N.W.2d 816 (1947). The delay which Bingley points out had nothing to do with the acquisition of the claim by Anita Valley.

■ B. Equitable estoppel and laches are affirmative defenses. The party asserting these defenses has the burden to establish all of their essential elements by clear, convincing and satisfactory evidence. *Moser v. Thorp Sales Co.*, 256 N.W.2d 900, 908 (Iowa 1977). Prejudice is an element of both defenses. *DeWall v. Prentice*, 224 N.W.2d 428, 430 (Iowa 1974) (equitable estoppel); *Davidson v. Van Lengen*, 266 N.W.2d 436, 439 (Iowa 1978) (laches). And "[p]rejudice cannot be inferred merely from the passage of time." *Cullinan v. Cullinan*, 226 N.W.2d 33, 36 (Iowa 1975). Moreover, laches cannot ordinarily be claimed against one bringing an action within the statute of limitations, absent some special detriment to another. *Moser*, 256 N.W.2d at 908.

Bingley, in order to succeed on these defenses, must make a showing of some special prejudice beyond that claimed from the passage of two years between the discovery

of Bessire's misdealings and the bringing of this action. And his arguments to this court have not pointed out any special detriment which would support a laches claim.

C. Bingley next argues that by delaying nearly two years before making complaint, Anita Valley ratified the actions of Bessire. The elements of ratification were set out in *Pillsbury Co. v. Ward*, 250 N.W.2d 35, 39 (Iowa 1977). In order for that defense to arise, among other things, the acting individual must profess to act on behalf of his purported principal. The case presents a question as to whether, when Bessire persuaded Bingley to cash the Anita Valley check and pass the funds represented thereby on to Bessire, Bessire was operating and purporting to operate on behalf of Anita Valley, or solely on his own behalf. If the latter is found, then ratification would not have any application to this case.

D. Finally, Bingley seeks to be protected by section 554.3405(1)(c), The Code. He is entitled to no such shelter. The relevant portions of the statute are these:

    1. An endorsement by any person in the name of a named payee is effective if

      *a.*   .   .   .

      *b.*   .   .   .

      *c.* an agent or employee of the . . drawer has supplied him with the name of the payee intending the latter to have no such interest.

This provision is intended to protect the subsequent holder or drawee of a check. U.C.C. § 3–405, Comment 4. Bingley fits

neither category. A holder is "a person who is in possession of . . . an instrument . . . issued or endorsed to him or his order or to bearer or in blank." Section 554.1201(20), The Code. But Bingley is no longer in possession of the check. The drawee of a check is the bank which has been ordered to exchange the instrument for money. *See* § 554.3104(2)(b), The Code. Bingley does not fit that description.

The reason that section 554.3405 does not apply is clear. The point of the section is to enhance the negotiability of negotiable instruments. The instrument involved here, the Anita Valley check, was negotiated successfully. Bingley was never put in the position of holding the check without being able to redeem it for money. Because there is no question of the check's negotiability, section 554.3405 has no application.

IV. Our holding in division II requires that the case be remanded for further proceedings consistent with this opinion. Any judgment entered in plaintiff's favor shall include interest from the time of the payment from Anita Valley to Bingley. *Espe v. McClelland & Son*, 208 Iowa 512, 517–18, 226 N.W. 130, 132 (1929).

REVERSED.