**ANITA VALLEY, INC.,**
**Plaintiff-Appellant,**

v.

**Park E. BINGLEY, d/b/a Bingley Auction Company, Defendant-Appellee.**

No. 2–66693.

Court of Appeals of Iowa.

May 25, 1982.

Harry T. Watts and Ronald L. Anderson of Dickinson, Throckmorton, Parker, Mannheimer & Raife, Des Moines, for plaintiff-appellant.

Robert M. Holliday and John T. Ward of Wasker, Sullivan & Ward, Des Moines, for defendant-appellee.

SNELL, Judge.

Plaintiff appeals from the trial court's judgment which awarded plaintiff $201.25 under the theory of "money had and received." Plaintiff asserts that the trial court erred and that it is entitled to restitution in the amount of $51,117.50 because: (1) the money it paid to defendant was given for a special purpose which was not carried out; and (2) defendant's actions and conduct were unreasonable under the circumstances and there was a failure of consideration. We reverse.

I. The plaintiff corporation is a dealer in livestock. Defendant is in the business of selling cattle on commission. Plaintiff's former president, Gene Bessire, was convicted in federal court of defrauding the plaintiff, in several respects, one of which resulted in this litigation.

Bessire obtained a check for $51,117.50 from plaintiff's corporate treasurer to purchase cattle from defendant, Bingley Auction Co. Bessire then took the check made payable to defendant and told defendant that he, Bessire, wished to sell some cattle to the plaintiff corporation but had to keep secret the fact that he was the seller because plaintiff would not buy cattle from him. Bessire proposed that defendant accept the check from the corporate plaintiff, which would cause the plaintiff's other officers to believe that plaintiff had purchased cattle from defendant. Bessire further proposed that defendant write another check to Bessire for nearly the same amount, deducting only a small fee for defendant's services, whereupon Bessire would deliver to the plaintiff the cattle supposedly purchased from defendant. Defendant accepted this scheme and did as Bessire proposed.

The story which Bessire told to defendant was untrue. No cattle were ever delivered to the plaintiff corporation because no such cattle existed. Bessire converted defendant's check to his own use. The net results of the transaction, in addition to Bessire's illicit gain, were as follows: (1) the plaintiff corporation lost $51,117.50, the amount of the check which Bessire gave to defendant, and (2) defendant gained $201.25 as a fee for his "services."

Bessire subsequently went bankrupt and was prosecuted on various charges in federal court. The plaintiff corporation then attempted to recover its loss by suing defendant. Defendant's liability for the amount of his "fee" is undisputed. The plaintiff alleged that defendant was also liable for the remaining $50,916.25 under a theory of "money had and received." The trial court initially granted defendant a summary judgment. However, the plaintiff appealed, and the supreme court reversed the summary judgment and remanded for trial. *Anita Valley, Inc. v. Bingley*, 279 N.W.2d 37 (Iowa 1979). In its decision to remand for trial, the supreme court noted that Anita Valley, to recover the passed on funds from Bingley, must show that Bingley's payment to Bessire was unreasonable. This involved a question of whether Bingley could reasonably expect that Bessire would actually deliver the cattle to Anita Valley. The court cited for comparison *Hisky v. Williams*, 40 Iowa 499 (1875). In *Hiskey*, the court held that an innocent holder of a note and mortgage was entitled to recover from the person who dealt with the landowner's agent in a manner which made the loss possible. The court stated:

The defendant claims that Graham, during the whole negotiation, represented himself as the agent of Hiskey. Being advised of this fact, the exercise of common prudence required that defendant should deal with him as agent. If this had been done, and the note and mortgage had been executed to the principal it would not have been in the power of the agent to defraud her. Instead, however, of doing this, knowing, as she claims, that Graham was a mere agent, she dealt with him throughout, in form, as if he were the principal.

She accepted from him a deed for the premises, and executed to him notes and a mortgage, which make no reference to

his representative capacity. If, when she was advised the title was coming through Graham, she had taken the precaution to examine the records, she would have been protected from loss, for the mortgage sued on was recorded two weeks before the purchase was completed.

Graham, at the time of the sale to defendant, was the agent of plaintiff, or he was not. If he was not such agent, defendant has no ground of complaint. If he was such agent, she should have dealt with him as such. We accept as correct the law announced by appellee's counsel that, "where one of two innocent parties must suffer, from the fraudulent acts of a third party, he who enables such third party to commit the fraud, must suffer." But we are satisfied that if any loss results in this case, it is in consequence of the careless manner in which the defendant dealt with Graham.

Having dealt with Graham as a principal, she must bear whatever loss is occasioned by his assuming the character of a principal.

Bingley not only knew that Bessire was the agent of Anita Valley but also was told by Bessire that he intended to deceive his principal. The whole scheme was based on the premise that Anita Valley would not buy cattle from Bessire. Bingley's sole function in the transaction was to make possible a sale of cattle to Anita Valley that he understood would not otherwise have been acceptable. The scheme was conceived, promoted and accomplished by duplicity. For Bingley to receive immunity because he could reasonably expect Bessire to deliver the cattle ignores the cloud of deception pervading the entire deal. Anita Valley did nothing to promote the fraud which caused the loss, while Bingley did what was critical to allow its success. Under these circumstances Bingley's payment to Bessire was unreasonable. We therefore find that Bingley is not shielded from liability for the loss caused by his actions and Anita Valley is entitled to judgment for $51,117.50 plus interest from the time of the payment by Anita Valley to Bingley.

REVERSED AND REMANDED FOR ENTRY OF JUDGMENT IN ACCORDANCE HEREWITH.

All Judges concur except OXBERGER, C. J., and DONIELSON, J., who dissent.

DONIELSON, Judge (dissenting).

I dissent.

First, it should be noted that *Anita Valley, Inc. v. Bingley*, 279 N.W.2d 37 (Iowa 1979), established the law of the case when the supreme court held that "In order for Anita Valley to recover those passed-on funds from Bingley, it must show that Bingley's payment to Bessire was unreasonable. That is, there is a question of whether Bingley could reasonably expect that Bessire would actually deliver the cattle to Anita Valley." *Id.* at 40.

I cannot agree with the majority's conclusions that "Anita Valley did nothing to promote the fraud which caused the loss while Bingley did what was critical to allow its success."

The evidence indicates that Bessire was a talented con artist. Bessire successfully defrauded a number of individuals and businesses because he was perceived in the community as an honest and believable individual. However, I find it hard to believe that Bessire could have perpetrated a four million dollar fraud *but for* the fact that Anita Valley put him in a position of power and trust, and then failed to make him accountable for his actions. They allowed him to play fast and loose with their own money and ultimately the money of many other persons.

The record indicates that transactions such as this one in the cattle industry are often conducted in an informal manner and based upon mutual trust between the parties. Bingley's only error, an error I might add that was made by multitudes of others including the plaintiff, was to trust Bessire,

who had been honest in his past dealings with Bingley, to deliver cattle to Anita Valley. In light of the facts of this case and the supreme court's prior holding, I believe Bingley could reasonably expect that Bessire would deliver the cattle to plaintiff. I would affirm the trial court.

OXBERGER, C. J., joins this dissent.