MERCY HEALTH CENTER, A DIVISION OF the SISTERS OF MERCY HEALTH CORPORATION, Appellee,

v.

IOWA STATE DEPARTMENT OF HEALTH and Tri-State Convalescent Center, Inc., d/b/a Americana Health Care Center of Dubuque, Iowa, Appellants.

No. 83–1366.

Supreme Court of Iowa.

Oct. 17, 1984.

Thomas J. Miller, Atty. Gen., and Maureen McGuire, Asst. Atty. Gen., for appellant Department.

Edwin N. McIntosh of Davis, Hockenberg, Wine, Brown & Koehn, Des Moines, for appellant Americana.

Alfred E. Hughes of Hughes, Trannel & Jacobs, Dubuque, and Margaret A. Shannon of Honigman, Miller, Schwartz & Cohn, Detroit, Mich., for appellee.

Considered by UHLENHOPP, P.J., and McGIVERIN, LARSON, SCHULTZ, and WOLLE, JJ.

UHLENHOPP, Justice.

This appeal involves a statute relating to certificates of need found in sections 135.61 and following of the Iowa Code of 1983. *See Iowa State Dep't of Health v. Hertko,* 282 N.W.2d 744 (Iowa 1979).

Section 135.63(1) of the Code provides in pertinent part:

> A new institutional health service or changed institutional health service shall not be offered or developed in this state without prior application to the department for and *receipt of* a certificate of need, pursuant to this division.

(Emphasis added.)

Subject to the Iowa Administrative Procedure Act in chapter 17A of the Code, the Iowa State Department of Health determines whether a given project comes within the statute requiring a certificate of need. I.A.C. 470–202.4. Within the Department of Health, and again subject to the Iowa Administrative Procedure Act, the Iowa State Health Facilities Council makes decisions on applications for certificates of need. Iowa Code §§ 135.62(2)(d)(1), .69.

Mercy Health Center is an institutional health facility in Dubuque, Iowa. At the time of the present proceedings, Xavier Hospital, another health facility, had merged with Mercy.

Hospitals in Iowa generally provide two levels of care: acute and sub-acute. Sub-acute care includes skilled nursing care and intermediate nursing care. Americana Health Care Center in Dubuque provided skilled nursing care at the times in question. Mercy desired to designate certain beds in Xavier also for skilled nursing care.

Departmental rules specify skilled nursing care as one category of beds in an institutional health service. I.A.C. 470–202.2(3)(b). Section 135.61(19)(d) of the Iowa Code provides:

*"New institutional health service"* or *"changed institutional health service"* means any of the following:

. . .

d. A permanent change in bed capacity, as determined by the department of an institutional health facility or a health maintenance organization. For purposes of this paragraph, a change is permanent if it is intended to be effective for one year or more.

. . .

Similarly, the departmental rules state in I.A.C. 470–202.2(8):

A permanent change in bed capacity of an institutional health facility or health maintenance organization means a change if the change is intended to be effective for one year or more which: a) redistributes the beds among the categories listed in subrule 202.3; or b) relocates beds from one physical facility to another.

The parties are agreed that the designation of Xavier beds for skilled nursing care required a certificate of need; it was for a permanent change. Accordingly, Mercy applied to the department for a certificate of need allowing it so to designate the beds in Xavier.

The president of Mercy testified:

Q. In the summer of 1982, did Mercy make application to the Department of Health to offer skilled nursing services in the Xavier Facility? A. Yes.

Q. Was that for a 37 bed unit? A. I believe so.

Q. Was that particular application heard before the Health Facilities Council? A. Yes.

Q. And what was the result of that Hearing? A. It was denied.

Q. Okay. In November of 1982, did Mercy again have a Hearing before the Health Facilities Council? A. Yes.

Q. Was that Hearing with respect to the Xavier Park project? A. Yes.

Q. Did the Xavier Park project include a request for a 35 bed skilled nursing unit? A. Yes.

Q. At that Hearing, did Mercy present evidence of its belief that this particular project was needed in the Dubuque Community? A. Yes, we did.

Q. Did Mercy present evidence with respect to the lowering of health care costs in the provision of this particular service? A. Yes, we did.

Q. What was the result of that particular Hearing? A. It was denied.

Q. Did Mercy request a re-hearing with respect to its Xavier Park denial? A. Yes.

Q. Was that re-hearing held before the Health Facility Council? A. Yes.

Q. Do you recall when that re-hearing was held, Sister? A. November, I believe.

Q. Okay. Was the original Hearing held in November, Sister? A. Okay, January of 1983.

Q. Okay, what was the result of that rehearing? A. It was denied.

Q. What was Mercy's action from that point? A. We went to our Divisional Board and considered several options, decided that we would go back once more.

Q. Did you appeal to the Commissioner of Public Health? A. We did.

Q. What was the result of the appeal to the Commission [sic]? A. The Commission [sic] wrote a very positive Brief, requesting the Health Facilities Council to please review their decision.

The Commissioner appeared before the Council and pleaded verbally for them to re-consider their decision, and the Council voted not to.

Q. Do you recall the date of the Council's re-consideration hearing? A. August 11, 1983.

On August 12, 1983, the day after the council refused reconsideration, Mercy began providing skilled nursing care at Xavi-

er. Mercy distributed a letter which, without limitation to temporary service, stated in part:

> In weighing all options, we have concluded that our primary responsibility is to our patients and their families.
>
> Therefore, in response to a documented need, we will immediately begin offering subacute care in the existing hospital facilities at Xavier Park.

Mercy's president testified:

Q. How many patients were admitted to that particular facility? A. On August 12th?

Q. Well, from August 12th to the date of the modification of this Court's Stay Order? A. We have admitted a total of 13 patients.

Q. And how many patients are presently in the Xavier Facility? A. I did not check this morning. Yesterday there were nine.

Q. Are these patients skilled nursing patients? A. Yes.

As Mercy's reliance in this appeal is on the claim that the Xavier skilled nursing unit was temporary and therefore did not require a certificate of need, we need not develop the circumstances of Mercy's instituting that unit, other than the following correspondence.

On August 20, 1983, Mercy's president wrote the Commissioner of Public Health at the Department of Health that Mercy's board of directors had directed an appeal of the council's denial of a certificate, and that:

> The Board determined it could provide these services at the Xavier Unit under its existing hospital license for only so long as the need existed but in no event for longer than one year, so this determination should not be regarded as a permanent change in bed capacity at this time.

A representative of the department responded on August 23, 1983, in pertinent part:

> When a project has been denied a certificate of need, that project cannot proceed until a court might determine that a certificate should have been issued. This approach is consistent with Iowa Code section 135.63(1) which states that a new or changed institutional health service shall not be offered without request for and receipt of a certificate of need. If the Department would view your project as a temporary change in bed capacity, then any facility wishing to change its bed capacity on a permanent basis would be authorized to provide such services before and until a certificate of need was granted, a result which is contrary to the intent of Iowa's Certificate of Need Law.

After a telephone conversation between counsel, an assistant attorney general wrote Mercy's attorney that the response of August 23, 1983, constituted final agency action within section 17A.19 of the Iowa Code.

Mercy sought judicial review of the council's denial of its application for a certificate of need. That case was decided by the district court and is now pending in this court as No. 84–292. We intimate no opinion at this time on the merits of that case.

In the present proceeding, Mercy separately sought judicial review of the department's final agency action holding that skilled nursing care could not be provided at Xavier unless and until a final court adjudication is made resulting in the granting a certificate of need in the other judicial review proceeding. Americana intervened. In the present proceeding Mercy's president testified:

Q. In making application to the Department of Health, was it Mercy's intent—making original application to the Department of Health, was it Mercy's intent to offer skilled nursing care on a permanent basis? A. Yes.

She also testified:

Q. Okay. Sister, is it correct to say that Mercy has appealed to this Court from the final Certificate of Need decision made by the Health Facilities Council in August of 1983? A. Yes.

Q. Is it correct to say that Mercy is hoping to receive a favorable determina-

tion with respect to that appeal? A. Absolutely.

Q. *If Mercy is granted a Certificate of Need pursuant to its appeal, does Mercy intend to offer skilled nursing care in Xavier Facility on a permanent basis? A. Yes.*

(Emphasis added.)

The district court in the present proceeding held that a certificate is not required and reversed the department's agency action. The department and intervenor Americana appealed.

I. *Mootness.* More than a year has now passed since Mercy started providing skilled nursing care at Xavier. The present case may be moot. The issue presented, however, is of public importance, and is likely to recur and elude adjudication unless we entertain it. We thus proceed to decision. *Iowa Freedom of Information Council v. Wifvat,* 328 N.W.2d 920 (Iowa 1983).

II. *Sections 135.61(19)(d) and 135.63(1).* The parties are agreed that the appeal presents but one issue: whether Mercy's designation of skilled nursing beds comes within sections 135.61(19)(d) and 135.63(1) of the Iowa Code. They also argue the question of whether this issue is one of fact or of law. Mercy contends that the district court did not overturn a fact finding by the administrative agency, and that the question is a legal one. We find no necessity to decide whether a legal or factual question existed. We will assume for purposes of decision that Mercy is correct, a legal question is presented, and we approach the issue on that basis. Mercy's legal position is that under the cited sections it had an absolute right to install skilled nursing care and designate it temporary, and that the pendency of its application for a permanent certificate is irrelevant.

Resolution of the controversy turns on construction of "permanent" in section 135.61(19)(d) and "receipt of" in section 135.63(1). Statutory construction is ultimately for the courts. *Ellis v. Iowa Dep't of Job Service,* 285 N.W.2d 153, 156 (Iowa 1982).

We cannot divorce the construction of sections 135.61(19)(d) and 135.63(1) from the circumstances of the case. A typical illustration of a temporary use of beds for skilled nursing purposes would be one in which the Americana skilled nursing facility was damaged by fire or storm and, during a repair period of less than a year, Xavier provided skilled nursing care.

That type of use, however, is not at all what we have here. According to Mercy's own president, if Mercy obtains a certificate of need in the main case on appeal, skilled nursing care will be offered at Xavier on a permanent basis. Mercy thus has a dual intent: to discontinue skilled nursing care at Xavier if a certificate is refused, but to provide skilled nursing care permanently if a certificate is granted.

Actually, Mercy's operation of the skilled nursing care beds at Xavier is thus a step in its larger effort to obtain a certificate of need. The operation stands or falls on the outcome of the effort to obtain a certificate. We doubt that Mercy would have opened and operated the skilled nursing beds at Xavier if it were not seeking a certificate of need in the other case; why would it go to that effort and expense if it were only going to operate a matter of months? We cannot construe section 135.-61(19)(d) in isolation from the proceeding to obtain a certificate to operate permanently.

Section 135.61(1) of the Code prohibits changed health service until "receipt of" a certificate of need. If an applicant for a certificate who meets defeat before the council can seek judicial review and offer the service during the pendency of judicial review up to a period of a year, the quoted prohibition in section 135.61(1) on operation until receipt of a certificate would be defeated. If the courts ultimately turned down the application for a certificate, the applicant would, for the year, have caused itself expense of service and its competitor loss of revenue; it would have provided the duplication of service that the certificate of need legislation was intended to obviate.

If an applicant can provide the service during the judicial review proceedings and those proceedings are not concluded within a year, what is to prevent the applicant from discontinuing skilled nursing care temporarily and then commencing again for another year? For that matter, what would prevent an applicant from commencing "temporary" service at the time it originally files its application for a certificate of need?

The district court should have viewed the certificate of need proceeding, including the present proceeding, as a whole, and held that Mercy cannot operate a skilled nursing unit at Xavier unless and until it "receives" a certificate of need as a result of judicial review in the main case, in conformity with section 135.63(1) of the Iowa Code.

REVERSED.