**MERCY HEALTH CENTER, A DIVISION OF SISTERS OF MERCY HEALTH CORPORATION, Appellee,**

v.

**STATE HEALTH FACILITIES COUNCIL, Appellant,**

**and**

**Tri-State Convalescent Center, Inc., d/b/a Americana Health Care Center of Dubuque, Iowa, Intervenor-Appellant.**

No. 84–292.

Supreme Court of Iowa.

Jan. 16, 1985.

Thomas J. Miller, Atty. Gen., Jeanine M. Freeman and Maureen McGuire, Asst. Attys. Gen., for appellant state health facilities council.

Edwin N. McIntosh and Lucy J. Gamon of Davis, Hockenberg, Wine, Brown & Koehn, Des Moines, for intervenor-appellant.

Alfred E. Hughes of Hughes, Trannel & Jacobs, Dubuque, and Honigman, Miller, Schwartz & Cohn, Detroit, Mich., for appellee.

Considered by UHLENHOPP, P.J., and HARRIS, McCORMICK, McGIVERIN, and SCHULTZ, JJ.

HARRIS, Justice.

This case turns on the cardinal rule of administrative law: judgment calls are the province of the administrative tribunal and not of the courts. There is obviously much to be said for the plan proposed by the petitioner but it must be sold to the administrative agency. We reverse a district court decision which overturned the administrative determination.

Petitioner Mercy Health Center (Mercy) is a non-profit health care organization which owns two facilities in Dubuque, St. Joseph's and Xavier. The two hospitals were formerly separately owned and each functioned as an independent acute care facility. The Xavier facility is licensed as a 132-bed acute care hospital which, due to lack of demand, has not offered acute care since June of 1982.

It seemed to Mercy's management that much better use could be made of the Xavier facility. A plan was developed to convert it into an elderly care unit. It was proposed to spend three and one-half million dollars on the project. It was no impromptu scheme. According to Mercy's application for certificate of need:

> The facilities and services of the Xavier Park will include rehabilitative therapies of occupational therapy, physical therapy, speech and recreation, a sheltered work center, exercise facilities, meal service, day care, day hospital, crafts and group activities, respite and hospice. In addition, it will house a mini-mall area of shops, banks, beauty shops, and other merchants. Offices for various community service agencies will be provided at Xavier Park. There will also be offices designated for ophthalmology, podiatry, mental health, hearing, dental, legal and social services.

> The Xavier Park proposal includes provision for 35 skilled nursing beds which will accommodate skilled nursing, respite, hospice, and sheltered care services. Respite is a program of short-term care for impaired elders. It is provided so that relatives who are primary care givers may take vacations or tend to other

business. Hospice is a program of health care which coordinates physical, psychological, and spiritual services for the terminally ill and their families. In addition, the facility will provide residential housing for approximately 64 individuals. Twenty-four hour nurse coverage in the skilled nursing facility will also be available for the other residents in the event of an emergency. This is one instance of the cost effective sharing of services between residents of the center and the skilled nursing facility. The Xavier center will also house an urgicenter, which is a walk-in medical facility, open 12–14 hours per day for individuals with non-emergency conditions.

According to Mercy:

The Xavier Park project would convert an existing viable structure, now underutilized as an acute-care hospital, into a valuable community asset, for renovation costs of less than $3.5 million, or approximately $32 per square foot. A local architect ... has described the existing 1949 structure as 'one of the few hospital buildings that are providing very economical renovation'. This is in contrast to building costs for a new structure of $50 per square foot and higher per square foot costs for comparable renovations.

The only opposition to the project was voiced by the intervenor Tri-State Convalescent Center Inc. (Americana), a for profit organization which operates Americana Health Care Center of Dubuque, a 92-bed facility. Americana is the only local current provider of the sort of care locally that would be offered by Xavier Park. Only 32 Americana beds are available for Medicare reimbursement and it provides no services for indigents. At the time of final submission in district court Americana was 100% occupied and had a waiting list. Dubuque County's population is slightly less than 100,000 and includes a high percentage of elderly citizens.

In order to proceed with the project the petitioner applied with the Iowa health care facilities council for the certificate of need required under Iowa Code section 135.63. A hearing was held after which the council entered the first of what were to be three denials. It determined there was an oversupply of beds in Dubuque and that, under the proposal, health care dollars would subsidize non-health care services which could be provided by non-health care industries.

A rehearing was sought and held. It resulted in another denial. Mercy appealed to the commissioner of public health; he felt the certificate should be granted. Strangely, however, the commissioner has been given no statutory authority to reverse the council. Under section 135.70 the commissioner can merely request the council to reconsider its decision and this he did. It was to no avail because the council persisted in its denial.

Thereafter Mercy appealed to district court under Code section 17A.19. The district court reversed the denial. Two grounds were stated. It was determined that the council "[1] failed to properly apply existing statutory criteria to [Mercy's] application, and [2] factually applied one or more additional standards or criteria that [do not] exist under the statute or administrative rules." This appeal followed. We decided another aspect of the same controversy in *Mercy Health Care Center v. Iowa State Department of Health*, 356 N.W.2d 200 (Iowa 1984).

■ I. Initially, we point out that we do not believe the peculiarly limited authority given to the commission under section 135.70 changes the scope of review for either the district court or for us. This is the unique provision which gives an administrative superior the right of review but authority only to recommend reconsideration. It is nevertheless apparent that the legislature intended, not for our review authority to be more than would ordinarily be the case, but merely for the commissioner's authority to be less.

■ Mercy vigorously contends the district court must investigate and determine whether any errors of law were made by the council, especially whether it had

acted outside its statutory authority. The council and Americana contend the agency decision must be affirmed so long as it is supported by substantial evidence. Both contentions are obviously correct. The difficulty here is common in reviews of any agency's application of statutory criteria. The prevailing party sees the agency determination as a pure judgment call whereas the disappointed party sees the same determination as a failure to abide by the statute which lists the criteria.

■■■ II. The first question is whether the district court correctly applied the law. *Cook v. Iowa Department of Job Service,* 299 N.W.2d 698, 701 (Iowa 1980). In determining whether correct law was applied, we apply the standards of section 17A.19(8) to the agency action. Section 17A.19(8) is "the exclusive means for challenging agency action." *Benson v. Fort Dodge Police Pension Board of Trustees,* 312 N.W.2d 548, 550 (Iowa 1981). In order to succeed in challenging agency action, the petitioner must demonstrate prejudice to substantial rights and the prejudice must arise from agency action which falls within one or more of the grounds enumerated in section 17A.19(8). *Iowa Bankers Association v. Iowa Credit Union Department,* 335 N.W.2d 439, 447 (Iowa 1983).

Mercy contends, and the district court agreed, that the council had no authority to consider cross-subsidy (health dollars contributing to non-health services) in considering the application. The district court held such a consideration to be the improper use of an unpromulgated rule.

Mercy supports the holding on the ground it is not specifically mentioned among the criteria in section 135.64 and by pointing to the absence of any specific administrative rule on cross-subsidies. We do not believe the council is so limited in its considerations.

■■■ The criteria mentioned in section 135.64 are not exclusive. The council must consider them but is not limited to them. In establishing the council the legislature stated:

[I]t is the policy of this state that the offering or development of new institutional health services be accomplished in a manner which is orderly, economical and consistent with a goal of providing the necessary and adequate institutional health services to all of the people of this state while avoiding unnecessary duplication in institutional health services and preventing or controlling increases in the cost of delivering the services ...

[I]t is further the public policy of this state that health care is a right of the people, but the general assembly finds and declares (1) that rising hospital and health care facility costs may place the services of these facilities beyond the means of a majority of the people of this state....

1977 Iowa Acts 67th G.A. Ch. 75.

■■■ We think the council's concern with cross-subsidization was a proper one. It was not prohibited by not being specifically listed among the considerations required under section 135.64.

Neither do we think the council is guilty of applying an unpromulgated rule. Rather we think the council made an authorized application of the statute. Section 135.-64(1)(f) requires the council to consider

The immediate and long-term financial feasibility of the proposal ... as well as [its] probable impact ... on the costs of and the charges for providing health services....

Section 135.64(2)(a) requires the council, before granting the permit, to find in writing that

Less costly, more efficient or more appropriate alternatives ... are not available ... [or] practicable.

Cross-subsidization is a factual matter which bears directly on these listed considerations. Mercy's claim that cross-subsidization was an improper consideration is without merit.

■■■ III. We also reject Mercy's contention that the agency action was not supported by substantial evidence. Evidence is substantial if a reasonable person would

find it adequate to reach the given conclusion, even if a reviewing court might draw a contrary inference. *Messina v. Iowa Department of Job Service,* 341 N.W.2d 52, 59 (Iowa 1983). Moreover, the fact that an agency might draw inconsistent conclusions, as was the case here, does not necessarily suggest its final conclusion is unsupported by substantial evidence. *See City of Davenport v. P.E.R.B.,* 264 N.W.2d 307, 311 (Iowa 1978). Although there was considerable evidence at variance with the agency decision there was substantial factual evidence to support it.

Neither can we find the agency action was unreasonable, arbitrary or capricious under section 17A.19(8)(g). *See Churchill Truck Lines Inc. v. Transportation Regulation Board of the Iowa Dept. of Trans.,* 274 N.W.2d 295, 299 (Iowa 1979).

REVERSED AND REMANDED.