Jeffrey R. CRANE, Petitioner-Appellant,

v.

IOWA DEPARTMENT OF JOB SERVICE, Respondent-Appellee.

No. 86–940.

Court of Appeals of Iowa.

July 30, 1987.

William A. Shuminsky of Shuminsky & Molstad, Sioux City, for petitioner-appellant.

Blair H. Dewey and William C. Whitten of the Employment Appeal Bd., Des Moines, for respondent-appellee.

Heard by OXBERGER, C.J., and DONIELSON and HAYDEN, JJ.

HAYDEN, Judge.

Claimant, Jeffrey Crane, appeals from a district court decision which affirmed the denial of unemployment compensation benefits by the Department of Job Service. On appeal claimant makes the following assertions: (1) there was not substantial evidence to support the decision by the agency to deny benefits; (2) the alleged act for which claimant was discharged was a past act due to its condonation by his employer, Metz Baking Company (Metz), and therefore cannot support a finding of misconduct; and (3) the violation by Metz of their collective bargaining agreement estopped Metz from asserting claimant's alleged act constituted misconduct and precluded Job Service from finding misconduct. We affirm.

■■■ **I. Substantial Evidence.** Our scope of review in an appeal from a final agency decision is at law, not de novo. We are limited to the record made before the agency. *Taylor v. Iowa Department of Job Service*, 362 N.W.2d 534, 537 (Iowa 1985); *Green v. Iowa Department of Job Service*, 299 N.W.2d 651, 655 (Iowa 1980). The determination to be made is whether the decision by Job Service is supported by substantial evidence when the record is viewed as a whole. Iowa Code § 17A.19(8)(f) (1987). We are bound by the findings of the agency if they are supported by substantial evidence. *Hawk v. Jim Hawk Chevrolet-Buick, Inc.*, 282 N.W.2d 84, 85 (Iowa 1979). Evidence is substantial if a reasonable person would find it adequate to reach the given conclusion. *Mercy Health Center v. State Health Facilities*, 360 N.W.2d 808, 811–12 (Iowa 1985); *Messina v. Iowa Department of Job Service*, 341 N.W.2d 52, 59 (Iowa 1983).

Claimant was discharged February 6, 1985, for misconduct after allegedly partial-

ly exposing his buttocks at work in an aborted "moon" of a group of fellow employees on the evening of February 4.

An employee discharged for misconduct may be held ineligible for unemployment compensation benefits under the rules of the department which provide:

> *Misconduct* is defined as a deliberate act or omission by a worker which constitutes a material breach of the duties and obligations arising out of such worker's contract of employment. Misconduct as the term is used in the disqualification provision as being limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of employees ... or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer.

Iowa Admin.Code § 370–4.32(1)(a). This definition of misconduct has been held to accurately reflect the intent of the legislature when it provided in Iowa Code section 96.5(2) for the disqualification for unemployment benefits of those persons discharged for misconduct. *Huntoon v. Iowa Department of Job Service*, 275 N.W.2d 445, 448 (Iowa 1979).

■ Claimant asserts the evidence of his partial exposure was not substantial since Metz allegedly introduced only hearsay evidence at the agency hearing and did not provide corroboration. Claimant asserts corroboration of hearsay evidence of misconduct is required by Iowa Administrative Code section 370–4.32(9) ("[a]lleged misconduct or dishonesty without corroboration is not sufficient to result in disqualification"). We need not decide whether claimant's interpretation of this departmental rule is correct as we conclude the record reflects corroboration of the hearsay evidence of Metz.

At the agency hearing, Richard Bonahoon, the plant superintendent of Metz, testified he heard claimant admit at a grievance meeting held February 11th to having partially exposed his buttocks at work on February 4th. Initially at the hearing, claimant acknowledged making this admission but implied he had misspoke at the grievance meeting. When asked why he would say he had "partially mooned" if he had not actually done so, claimant then denied having ever made the misstatement. He asserted he had said somebody else might have said he had "partially mooned." He contended he had only pulled up his shirt and unbuckled his pants in preparation for the act before he stopped when it appeared the plant manager's son could see him.

The testimony of Mr. Bonahoon regarding claimant's admission and claimant's apparent ambivalence on the subject serve to corroborate the other evidence Metz introduced to prove the partial exposure occurred. We find this evidence was substantial since it was adequate for a reasonable person to conclude claimant intentionally partially exposed his buttocks at work on the evening of February 4th. *See Mercy Health Center*, 360 N.W.2d at 811–12. As such, we uphold the finding of fact by Job Service. *See Hawk*, 282 N.W.2d at 85.

■ We also uphold the finding by Job Service that claimant's action constituted misconduct as defined by the departmental rule. Metz is in the business of food preparation, which implicates the need for sanitation and the interest of the company in retaining a reputation for sanitary working conditions. Metz also has an interest, as an employer per se, in maintaining a work environment free of acts of a conceivably sexually harassing nature. Claimant's partial exposure of his buttocks raises obvious sanitation concerns. Moreover, the record reflects his action was directed in part at female employees, some of whom were offended.

In prior cases we have found the use of vulgar language may constitute misconduct and thus justify the denial of unemployment benefits. *See Warrell v. Iowa Department of Job Service*, 356 N.W.2d 587 (Iowa App.1984); *Zeches v. Iowa Department of Job Service*, 333 N.W.2d 735 (Iowa App.1983). We find the egregiousness of claimant's action in this case to be

on a level with the misconduct in those cases. We conclude claimant's deliberate act was in "violation or disregard of standards of behavior which [Metz] had the right to expect of employees," and thereby constituted misconduct.

**II. Past or Current Act.** A finding of misconduct must be based upon a current act for unemployment benefits to be denied. *Myers v. Iowa Department of Job Service*, 373 N.W.2d 507, 510 (Iowa App. 1985). Claimant asserts the act for which he was discharged was a past act due to its condonation by Metz. Relying upon application of the principles of agency law, claimant alleges Metz condoned his action through the participation and knowledge of its foreman, Fred Faber, who was claimant's supervisor. Claimant states the idea that he "moon" fellow employees originated with Mr. Faber, who also suggested the time and location within the plant for the act to occur. Claimant concludes his act was condoned in two ways. First, the instigation and approval of the act by Mr. Faber constituted the approval of the company. Second, the two day delay between the act and claimant's discharge constituted the approval of the company since it had immediate knowledge of the act—the knowledge of Mr. Faber which should be imputed to it—and nonetheless took no action against claimant.

■ Section 39 of the Restatement (Second) of Agency provides, however: "Unless otherwise agreed, authority to act as agent includes only authority to act for the benefit of the principal." Claimant has provided no evidence showing how Metz would be benefited by Mr. Faber's approval of claimant's act. As such, Mr. Faber lacked authority to do so, and without authority, his approval, if actually given, was not binding upon the company.

■ Application of the doctrine of apparent authority is also not helpful to claimant. Section 27 of the Restatement (Second) of Agency states:

[A]pparent authority to do an act is created as to a third person by written or spoken words or any other conduct of the principal which, reasonably interpreted, causes the third person to believe that the principal consents to have the act done on his behalf by the person purporting to act for him.

The only conduct of Metz discussed by claimant was the emplacement of Mr. Faber in the position of foreman. He has provided no evidence showing how he reasonably interpreted this emplacement to mean Metz consented to having this floor supervisor grant approval to him to partially expose his buttocks at work to fellow employees. The mere fact a foreman instigates and approves of egregious conduct does not mean it is reasonable to believe the employer has consented to this approval.

■ Claimant's remaining condonation claim relies upon the doctrine of imputed knowledge. Section 280 of the Restatement (Second) of Agency is illuminating, although it relates specifically to the liability of a principal (or master) for the torts of its agent (or servant). It provides:

If an agent has done an unauthorized act or intends to do one, the principal is not affected by the agent's knowledge that he has done or intends to do the act.

Similarly, an agent's knowledge is not imputable to the principal if the agent acts for his own benefit and contrary to the interests of his principal. *Anita Valley, Inc. v. Bingley*, 279 N.W.2d 37, 41 (Iowa 1979).

■ We have already determined the approval by Mr. Faber, if made, of claimant's act was unauthorized. Furthermore, the depth of his participation, as alleged by claimant, indicates his involvement was for his own pleasure. Clearly it was contrary to the interests of Metz. We conclude his knowledge of claimant's act cannot be imputed to Metz.

Since we have determined Metz did not condone claimant's act, we find it was a current act.

**III. Collective Bargaining Agreement.** Claimant contends the determination of misconduct was not a proper issue for Job Service to consider because the collective bargaining agreement between the union

of which he was a member and Metz provides for written disciplinary warnings prior to any discharge. Claimant alleges this provision was violated by Metz and asserts this violation precludes Job Service from finding misconduct and estops Metz from contending his act constituted misconduct.

 Generally the provisions of a collective bargaining agreement are not pertinent to a determination of a claimant's eligibility for unemployment benefits since making such an inquiry would tend to involve Job Service in the "morass of labor disputes preempted by the federal government." *Central Foam Corp. v. Barrett,* 266 N.W.2d 33, 35 (Iowa 1978). However, collective bargaining agreements are not always irrelevant to such determinations. *See Efkamp v. Iowa Department of Job Service,* 383 N.W.2d 566, 569 (Iowa 1986). In *Efkamp,* the Iowa Supreme Court noted and approved the following quote from 76 Am.Jur.2d *Unemployment Compensation* § 65 (1975):

> [S]ince the majority of the employees in an appropriate collective bargaining unit by selecting a union to represent them, make that union the exclusive bargaining agent for all of the employees in the union ... the rights of the individual worker to deal with his employer is surrendered to the bargaining agent....

*Id.* at 569–70. Although *Efkamp* dealt with whether a worker could reasonably refuse to work for a reduced wage, this quote is equally applicable to this case. Claimant alleges a violation of the collective bargaining agreement but neglects to highlight that the agreement provides for a grievance system in the case of such disputes. This grievance system was bargained for by claimant's union representatives and is binding upon him. To supplant it by requiring Job Service to predicate benefits determinations upon its resolution of grievances would indeed plunge the agency into the "morass of labor disputes." We uphold the decision of Job Service finding the alleged violation irrelevant to its determination of claimant's eligibility for unemployment benefits.

AFFIRMED.