**ESTATE OF Robert SCHOMER, Mildred Schomer, Executor, Appellant,**

v.

**Cecil PIGGOT d/b/a Noble Popcorn Products Company, Noble Popcorn, Noble Popcorn Farms, C.P. Popcorn, and Citizens Savings Bank, an Iowa Corporation, Appellees.**

No. 88–304.

Supreme Court of Iowa.

April 19, 1989.

Robert Kohorst of Kohorst Law Firm, Harlan, for appellant.

Kevin Murray of Vest, Becker & Murray, Sac City, for appellees.

1. Schomer died after bringing suit. His estate has been substituted as plaintiff. For convenience we however refer to the plaintiff as Schomer.

2. Other defendants, associated with Noble, are Cecil Piggot d/b/a Noble Popcorn Products Company, Noble Popcorn, Noble Popcorn Farms, and C.P. Popcorn.

3. Defendant makes no contention that replevin would not lie because the specific popcorn

Considered by HARRIS, P.J., and CARTER, NEUMAN, SNELL and ANDREASEN, JJ.

HARRIS, Justice.

Plaintiff Schomer[1] was a farmer who contracted with defendant Noble[2] to produce and deliver popcorn. Noble had given a $125,000 security interest in its inventory, including after-acquired property, to defendant Citizens Savings Bank.

Schomer delivered the popcorn to Noble and Noble placed it in its inventory. He was not paid for the corn. When Noble defaulted on the loan the bank took possession of the inventory.

Schomer remained unpaid by Noble and brought this action in replevin[3] and for alternative relief.[4] The bank's motion for summary judgment was sustained on the theory that, under Iowa Code section 554.-2401 (1987), title to the popcorn passed on delivery in spite of nonpayment. Hence, according to the trial court, the popcorn became a part of Noble's inventory and a part of the security for Noble's debt to the bank. With the passing of title, Schomer's interest in the popcorn was unperfected and inferior to that of the bank.

A replevin suit is an ordinary action. Iowa Code § 643.2; *Short v. Martin*, 255 Iowa 189, 192, 121 N.W.2d 154, 156 (1963). Review is for correction of errors at law. Iowa R.App. P. 4.

I. Should Schomer or should the bank be required to absorb this loss occasioned by the collapse of Noble? Schomer, who produced the popcorn, is an unpaid cash seller. The bank is Noble's financier and holds a perfected security interest. Schomer's argument is a carefully limited one: because he was not paid in accordance

could not be identified. *But see Lyons v. Shearman*, 245 Iowa 378, 381, 62 N.W.2d 196, 197 (1954); *Eller v. Myers*, 229 Iowa 114, 119, 294 N.W. 232, 234 (1940).

4. Defendants do not contest Schomer's right to join an alternative action for damages under Iowa Code § 643.2 (1987) ("there shall be no joinder of any cause of action not of the same kind....").

with his contract, title to the popcorn never passed from him to Noble. He thinks it follows that Noble could not transfer any interest in the popcorn to the bank.

Schomer's argument is direct enough, but flawed. It is at odds with the plain wording of Iowa Code section 554.2401(2), which provides:

Unless otherwise explicitly agreed title passes to the buyer at the time and place at which the seller completes the seller's performance with reference to the physical delivery of the goods....

See also, Annotation, *Construction and Effect of U.C.C. Art. 2, Dealing with Sales*, 17 A.L.R.3d 1010, § 29 (1968). Schomer's contention is also contrary to our holding in *Swets Motor Sales, Inc. v. Pruisner*, 236 N.W.2d 299, 305 (Iowa 1975) (dealer who paid for autos by check, later dishonored, acquired sufficient rights to permit inclusion in a security interest in the dealer's after-acquired inventory).

For reasons thought to be in the public interest the uniform commercial code is careful to accord the interests of secured creditors precedence over those of unsecured sellers. A highly respected authority states:

As a general proposition, one who sells goods on unsecured credit has no greater claim to the goods sold than he has to any other goods of his debtor-buyer, nor does he have a greater right to the goods sold than do other unsecured creditors of the common debtor.

J. White & R. Summers, *Uniform Commercial Code* § 7–15, at 292 (2d Ed.1980).[5]

The trial court was correct in rejecting Schomer's claim that he was entitled to possession of the popcorn.

■ II. In a separate assignment Schomer argues that summary judgment was inappropriate because, he says, there was an existing issue of fact. He contends his contract was with Noble Popcorn Farms whereas the bank's security interest

was in the inventory of Noble Popcorn Farms, Inc.

Schomer did not preserve error on the point; no discrepancy in corporate names was pointed out or relied on in trial court. Schomer points only to his resistance to the motion for summary judgment which referred to "a factual question as to who was the proper titleholder in this matter." But this statement addressed the dispute over whether title passed from Schomer to Noble, not the distinction Schomer now urges.

Because it was not preserved we do not consider the assignment. *See State Farm Mut. Auto. Ins. Co. v. Pflibsen*, 350 N.W. 2d 202, 207 (Iowa 1984).

■ III. Schomer asserts the U.C.C. unconstitutionally denies him equal protection of the laws because it favors financial institutions over farmers. The gist of the contention, as we understand it, is that bankers who regularly work with the U.C. C. are given an unfair advantage over farmers who do not. Although the U.C.C. has been adopted in all fifty states,[6] the District of Columbia, Guam, and the Virgin Islands, Schomer cites no authority for his position.

An equal protection challenge to the regulation of commerce is subject to a well-understood test. *See, e.g., Chicago Title Ins. Co. v. Huff*, 256 N.W.2d 17, 28 (Iowa 1977). Schomer's challenge clearly fails. The provisions at issue treat all parties the same, whether they are banks, corporations, or farmers. It is decidedly in the public interest for commercial transactions to be conducted expeditiously and in an orderly fashion. This would not be possible if equities were to be sorted out among the parties on an ad hoc basis. The equal protection clause does not demand an indescribably chaotic and wholly unworkable system under which commercial obligations would turn on the relative business acumen of the parties.

This is the reason for the rule that the working of individual hardship will not ren-

---

**5.** Section 2–702 of the U.C.C. (Iowa Code § 554.2702) is listed as the exception. Schomer did not claim to have invoked § 554.2702.

**6.** *See*, Table, 35 Iowa Code Ann. 1 (Supp.1988). Louisiana has adopted only articles one, three, four, five, seven and eight.

der a statute unconstitutional. *Diamond Auto Sales v. Erbe*, 251 Iowa 1330, 1335, 105 N.W.2d 650, 652 (1960). Neither are we persuaded by Schomer's argument that farmers are less familiar with the intricacies of the U.C.C. than are bankers. Lay persons, even those who deal with professional persons, are charged with knowledge of the law. *Millwright v. Romer*, 322 N.W.2d 30, 33 (Iowa 1982).

Article IX of the U.C.C. has survived constitutional challenges in a number of cases from other jurisdictions. Annotation, *Construction and Effect of U.C.C. Art. 9, Dealing with Secured Transactions, Sales of Accounts, Contract Rights, and Chattel Paper*, 30 A.L.R.3d 9, § 4, (1970). In *Personal Thrift Plan of Perry, Inc. v. Georgia Power Co.*, 242 Ga. 388, 249 S.E.2d 72, 74 (1978), a constitutional attack on section 9–302 was rejected. The Georgia supreme court held that a purchase money security interest in consumer goods was a rational classification.

The challenged U.C.C. provisions are eminently reasonable legislative regulations of commercial transactions. Schomer's equal protection challenge is without merit.

AFFIRMED.