Kenneth F. MAROLF d/b/a Marolf Farms, Appellant,

v.

IOWA GRAIN INDEMNITY FUND BOARD, Appellee.

No. 88–1489.

Supreme Court of Iowa.

July 19, 1989.

Eric W. Lam and Steven P. Greiner of Moyer & Bergman, Cedar Rapids, for appellant.

Thomas J. Miller, Atty. Gen., and Lynette A.F. Donner, Asst. Atty. Gen., for appellee.

Considered by LARSON, P.J., and CARTER, NEUMAN, SNELL and ANDREASEN, JJ.

LARSON, Justice.

Kenneth Marolf d/b/a Marolf Farms sold grain to Treimer Grain and Storage on several occasions beginning in November 1985 and ending in May 1986. The checks given by Treimer totaling $103,213 were not deposited until June 1987 when they were returned for insufficient funds. Marolf filed a claim against the Grain Depositors and Sellers Indemnity Fund, 1986 Iowa Acts ch. 1152, § 36(2) (codified as Iowa Code § 543A.6(2) (1987)). The board in charge of the administration of the fund denied Marolf's claim, and the district court affirmed. We reverse and remand to the board.

Marolf delivered the grain beginning on November 27, 1985, and ending on May 28, 1986,[1] receiving checks for each transaction within a few days of delivery. For some reason not shown in the record, Marolf did not deposit the checks until June 3, 1987, over a year after the last delivery.

Iowa Code section 543A.6(2) (1987) provided:

> The grain depositors and sellers indemnity fund is liable to a depositor or seller for a *claim which arises on or after May 15, 1986*, for ninety percent of the loss, as determined under subsection 1, but not more than one hundred fifty thousand dollars per claimant. The aggregate amount recovered by a depositor or seller under all remedies shall not exceed ninety percent of the value of the loss. If the moneys recovered by a depositor or seller under all remedies exceed ninety percent of the value of the loss, the depositor or seller shall reimburse the fund in the amount that exceeds ninety percent of the value of the loss.

(Emphasis added.) Because this statute became effective for "claim[s] which arise on or after May 15, 1986," the critical question here is when Marolf's claims "arose." Some of Marolf's grain was delivered to Treimer before May 15, 1986, and some later.

■ I. Marolf argues that, under section 543A.6(2), a claim does not "arise"

1. Claims for deliveries of grain by Marolf in June 1987 were paid by the fund and are not involved in this appeal.

until the seller presents the buyer's check for payment and it is dishonored. In this case, that would mean that all of the claims in question would be covered by section 543A.6(2) because all of the checks were presented and dishonored after the effective date of the act, May 15, 1986.

The fund counters that a claim arises when the grain is delivered, citing Iowa Code section 542.8 which provides, in part, that:

> a person licensed as a grain dealer shall pay the purchase price to the owner ... upon delivery ... or demand, but not later than thirty days after delivery....

If the fund's interpretation prevails, claims as to most of Marolf's grain would fall outside the coverage of section 543A.6(2) because it was delivered before May 15, 1986.

Under Iowa Code section 554.3412(2), a cause of action may accrue against the drawer of a check upon demand following dishonor, a principle which would advance Marolf's argument here. The purchase of grain, however, is a highly regulated business and specific statutes control. Under section 542.8, for example, the buyer must pay for it immediately or at least within thirty days. Also, title to the grain passes on delivery. *See Estate of Schomer v. Piggot*, 439 N.W.2d 190, 191–92 (Iowa 1989).

We believe that sections 542.8 and 543A.6(2), when considered together, mean that with delivery of the grain the seller has an immediate claim for payment. It is that claim, not a claim on the dishonoring of a check, which must postdate May 15, 1986. This is the interpretation placed on section 543A.6(2) by the board in charge of administering the indemnity fund, and we give weight to an agency's interpretation of its own statutes. *See Polk County Drainage Dist. Four v. Iowa Natural Resources Council*, 377 N.W.2d 236, 239 (Iowa 1985); *Woodbine Community School Dist. v. PERB*, 316 N.W.2d 862, 864 (Iowa 1982).

Under our construction of section 543A.6(2), the fund would be required to indemnify Marolf for ninety percent of his claims arising from deliveries after May 15, 1986. According to our calculations, this would be $38,534.11.

■ II. The board and the district court, while agreeing with our interpretation of section 543A.6(2), nevertheless concluded that Marolf was not entitled to payment for any of the grain. According to their rulings, Marolf could not recover because he had waited too long to present the checks for payment. The checks, all bearing dates in May 1986 or earlier, were not presented for payment until June 1987.

While not couching this principle directly in terms of laches, the fund says it is "kin" to laches, and it is clear that this is the gist of the fund's argument. The district court noted that the "cause" of the damage to Marolf was not the failure of the seller to pay for the grain but Marolf's own failure to present the checks in a timely fashion. The fund suggests that, if the checks had been presented in a timely manner, it is "likely" that there would have been sufficient funds to pay them. It also alleges that, if the checks had been presented in a timely manner, Treimer's license would have been revoked much earlier and losses to other grain producers might have been avoided.

In order to defeat a claim on the basis of laches, there must be a showing of demonstrable detriment to another. *See, e.g., Rowen v. LeMars Mut. Ins. Co.*, 282 N.W.2d 639, 647 (Iowa 1979), *appeal on remand*, 347 N.W.2d 630, *appeal after remand*, 357 N.W.2d 579 (Iowa 1984); *Anita Valley, Inc. v. Bingley*, 279 N.W.2d 37, 41 (Iowa 1979), *appeal after remand*, 322 N.W.2d 907 (Iowa 1982); *Henderson v. Millis*, 373 N.W.2d 497, 505 (Iowa 1985). A showing of laches must be made by clear and convincing evidence. *State v. Peterson*, 347 N.W.2d 398, 404 (Iowa 1984).

We are bound by an agency's fact-finding if it is supported by substantial evidence. *See, e.g., Hussein v. Tama Meat Packing Corp.*, 394 N.W.2d 340, 341 (Iowa 1986); *Dameron v. Neumann Bros., Inc.*, 339 N.W.2d 160, 163 (Iowa 1983). An agency's fact-finding is supported by sub-

stantial evidence if a reasonable person would find it adequate to reach a given conclusion, even if we might draw a contrary inference. *Mercy Health Center v. State Health Facilities Council,* 360 N.W.2d 808, 811–12 (Iowa 1985).

The record does not reveal any evidence as to whether Treimer could or could not have honored its checks had Marolf presented them to the bank immediately upon receipt. Nor does it show that future losses by the fund could have been prevented by Marolf if he had acted promptly. The fund argues that, "[m]ost likely, had Marolf presented the checks in a timely manner, there would not have been a loss and no claim would have been presented to the fund," but the record is insufficient to support such a finding. We therefore reverse the board and the district court on the fund's "laches" theory.

We agree with the district court on its interpretation of Iowa Code section 543A.6(2) but reverse insofar as the defense of laches resulted in denial of the claims arising after May 15, 1986. Accordingly, we reverse and remand to the board for entry of an order reimbursing Marolf ninety percent of the claims for grain delivered after May 15, 1986, as discussed in division I.

REVERSED AND REMANDED.